426 A.2d 550

<strong>COMMONWEALTH of Pennsylvania</strong>

v.

<strong>Sanford Emmory EDWARDS, a/k/a Sanford Henry Edwards, Appellant.</strong>

Supreme Court of Pennsylvania.

Argued Sept. 30, 1980.

Filed March 13, 1981.

282

Donald R. Marsh, Thomas G. Johnson, (Court-appointed) Indiana, for appellant.

Gregory A. Olson, Dist. Atty., Indiana, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice:

Appellant, Sanford Emmory Edwards, also known as Sanford Henry Edwards, appeals a judgment of sentence of life imprisonment for murder of the first degree imposed by the Court of Common Pleas of Indiana County.

Appellant was charged in connection with the death of Edith Morford, who lived in a trailer park in White Township, Indiana County. On February 22, 1979, decedent's daughter, Cora Ondo, discovered her mother's dead body, in the trailer. The body had a knife embedded in the chest. A pathologist determined that the stab wound of the chest was the cause of death and that there were other injuries indicating violence, including abdominal stab wounds, a crushed larynx, distention of the rectum, and multiple abrasions and contusions. State troopers who arrived at the scene found empty cans of Stroh's beer, head and pubic hairs that a forensic chemist found to be consistent with those of appellant, and a shirt that two co-workers identified as belonging to appellant. One of them said he was wearing it the previous day.

Commonwealth witnesses placed appellant and decedent at a tavern called the Red Onion on February 21, 1979. Arthur Stumbaugh, who knew them both, testified that he arrived at the tavern between 5:00 and 5:30 p. m. that day and that they were both there. Appellant drove Stumbaugh home at approximately 7:30 p. m., and asked him if he knew decedent. Stumbaugh said he knew her as "Edie." Appellant asked Stumbaugh if he thought she would go out with him and Stumbaugh said he did not know. Appellant said he would go back and try to talk to her.

Antonio Arroyo, a bartender at the Red Onion, confirmed that appellant drove Stumbaugh home, returned ten to fifteen minutes later, began talking to decedent, and then bought her a drink. Arroyo heard fragments of their conversation, during which they talked about where their cars were parked. Arroyo sold appellant a six-pack of Stroh's beer and shortly afterward, he noticed appellant and decedent were gone. He did not see them leave and could not say whether they left together.

Margaret Batistelli, a neighbor of decedent, testified she went out that night at approximately 8:30. She saw decedent arrive at her trailer by car with another car following. Batistelli returned between 11:30 and 11:45 and noticed there were no lights on at decedent's trailer and there was a car being jump-started by another car. She went into her own trailer and heard noises shortly afterwards. She looked out and saw a different car being pushed.

John Georgianni testified that at about the time referred to by Batistelli, he was called by his brother-in-law, who was visiting at the trailer park and whose friend's car would not start. He further testified that he drove over and jump-started the car. While he was there, he observed decedent's trailer and saw that there were no lights turned on. He heard screams coming from the trailer and then heard the opening of the door and the footsteps of someone leaving on the opposite side of the trailer from where he was. He testified that it sounded to him as though the person was walking around toward his side and then suddenly changed direction.

Richard King and Wanda Johnson testified that they were walking in the vicinity, that they saw appellant in his car by decedent's trailer, that the car was stuck, and that they pushed it. Their testimony was corroborated by Janet Derry, who looked out and saw them from her nearby apartment, after being awakened by noise.

Appellant admitted that he was with decedent in the tavern but denied that he went anywhere else with her. He presented witnesses in an attempt to establish an alibi defense.

■ Appellant alleges various errors. The first is that the court erred in refusing to sustain his demurrer. Appellant presented evidence after the ruling and having done so, he cannot now question its correctness. We will instead treat his claim as a challenge to the sufficiency of the evidence. *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976). The evidence is sufficient if it supports the verdict beyond a reasonable doubt when construed in the light most favorable to the Commonwealth, with all proper inferences drawn favoring the Commonwealth. *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978). From the Commonwealth's evidence, as summarized above, it may be inferred that appellant left the tavern with decedent and accompanied her to her trailer, that decedent's screams were heard from the trailer later that evening, and that appellant left just afterward and was trying to avoid being seen. When these inferences are considered, along with the fact that appellant was positively identified as having been with decedent and that she had been stabbed when she was next seen, it may be further inferred that it was appellant who did the stabbing. We find the evidence to be sufficient.

■ Appellant argues that the information against him should have been quashed since the information was based on a statute that subjected him to a possible death penalty. Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1311, added by Act of March 26, 1974, P.L. 213, No. 46, § 3, as amended by Act of September 13, 1978, P.L. 756, No. 141,

§ 1, 18 Pa.C.S.A. § 1311.  If a defendant receives a death sentence and successfully challenges the validity of the statute under which it is imposed, the proper relief is to modify the sentence, as was done in cases where previous death penalty laws were invalidated.  *Commonwealth v. Bradley*, 449 Pa. 19, 295 A.2d 842 (1972);  *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977).  The convictions themselves were not struck down, nor will we strike down the information in the instant case.  The question of the validity of a death penalty statute is moot when no death penalty is imposed.

■  Appellant asserts several grounds on which he claims to be entitled to a new trial.  Some of them relate to possible prejudice on the part of the jury because appellant is black and decedent was white.

Appellant claims he should have been allowed an increased number of peremptory challenges.  Each side was entitled to twenty challenges.  Act of October 7, 1976, P.L. 1089, No. 217, § 1, 19 P.S. § 811a.  We hold to the position we took in *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462 (1975), that a court has no discretion to allow more peremptory challenges than the number provided for by statute.

■  Appellant next alleges that the prosecution should have been restricted in its challenges to jurors so as to prevent it from excluding blacks on the basis of race.  He requested the restriction prior to trial, based on the speculative possibility of prejudice, not on any actual conduct by the prosecution.  The trial court noted that there was a black on the jury.  There was no showing that the prosecution excluded blacks and appellant is entitled to no relief in the absence of such a showing.  *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).  *Accord, Commonwealth v. Futch*, 492 Pa. 359, 424 A.2d 1231 (1981);  *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975).

Appellant's final argument relating to the selection of the jury is that the panel from which it was selected reflected racial prejudice in that only one of its two hundred members

was black. The trial court held a hearing on appellant's challenge to the panel during which the jury commissioner of the county testified that the panel was randomly selected from voter registration lists and that a questionnaire sent to prospective jurors contained no question that would reveal race. There was no evidence of actual discrimination in the selection process. The trial court believed that the small black representation was the result of a small black population of voting age.

We find that appellant's argument must fail. This case is controlled by *Commonwealth v. Jones*, 465 Pa. 473, 350 A.2d 862 (1976), where we held that the use of voter registration lists as a source of prospective jurors is permissible, unless the lists themselves reflect discriminatory practices. It is not rendered impermissible by the fact that the voter registration of members of an identifiable group is proportionally smaller than that of the general population. Appellant cannot prevail without showing discrimination in voter registration or in the use of the lists.

Appellant next argues that two black and white photographs of the decedent's body were improperly admitted. One of the photographs shows the body from the shoulders to the top of the buttocks; there are marks visible, but no obvious abrasions, wounds, or blood stains. The other photograph shows the body from the top of the head to the lower abdomen; the face was cut away before the picture was shown to the jury; four wounds are visible on the front part of the body; a knife handle protrudes from one of them; none of the wounds is gaping; little blood is visible.

In *Commonwealth v. Yost, supra*, we held that a trial court has discretion to admit photographs of the body of a homicide victim, but if the photographs are unduly gruesome, they must have sufficient evidentiary value to compensate for their inflammatory potential. The defense there objected to the admission of a photograph of the body of one of three homicide victims taken at the site where the bodies were discovered. The photograph was in black and

white and did not show any blood. We held that it was admissible because it was not unduly gruesome and had evidentiary value in that it showed what happened to the victims, and thereby aided in understanding the alleged crime. In the instant case, the photographs had similar evidentiary value in showing what happened to the victim. The photo showing the knife handle, with no part of the blade showing, gave the jury an indication of the force used, thus establishing the specific intent to kill. We find the evidentiary value to be sufficient for admission. The photographs were no more inflammatory than necessary, given that there are no gaping wounds, the face is not shown, and the amount of blood that appears is minimal.

Appellant contends it was error not to suppress evidence taken from him under a warrant. The warrant authorized the taking of samples of appellant's head and pubic hair, blood, and saliva, and any blood or foreign skin found on his body or clothing. Head and pubic hair samples were taken and compared to those found in decedent's trailer.

Appellant claims there was no probable cause for the warrant. The state trooper who obtained the warrant based his claim for probable cause on Antonio Arroyo's identification of appellant as having been with decedent and having purchased Stroh's beer; the finding of Stroh's beer cans in the trailer; and the identification of appellant's shirt by his co-workers. The affidavit stated that Arroyo knew appellant, and that his co-workers were familiar with appellant's clothing. Appellant claims the affidavit was inadequate because it did not indicate the facts and circumstances leading the affiant to believe his information was reliable, as required by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Information is to be viewed with a common sense, nontechnical, ungrudging, and positive attitude. *Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819 (1973). Statements of different informants may support each other when taken together. *Commonwealth v. Mamon*, 449 Pa. 249, 297 A.2d 471 (1972). In the instant case, the affidavit stated that the informants were familiar with

appellant and his co-workers were familiar with his clothing. That indicates their identifications were reliable, and the fact that each independently implicated appellant enhances their reliability. The affidavit was adequate to establish probable cause.

■ Appellant finally argues that the court erred in not charging the jury on involuntary manslaughter. He relies on cases such as *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977), where it was held that a defendant is entitled to an involuntary manslaughter charge on request. The record does not show that appellant requested the charge. Appellant acknowledges this, but claims that reference to an involuntary manslaughter charge was made while conferring with the court off the record. That is insufficient. Pa.R.Crim.P. 1119(b) provides that "no portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." In *Commonwealth v. James*, 483 Pa. 425, 397 A.2d 417 (1979), we refused to consider a claim of improper denial of a voluntary manslaughter charge when the defendant neither requested it nor objected to the charge that was given. We find the request must appear on the record to preserve the issue.

The judgment of sentence is affirmed.

NIX, J., files a Concurring Opinion.

NIX, Justice, concurring.

Although I agree the judgment of sentence must be affirmed, I cannot join the majority opinion because of its reliance upon *Commonwealth v. Futch*, 492 Pa. 359, 424 A.2d 1231 (1981) and *Commonwealth v. Jones*, 465 Pa. 473, 350 A.2d 862 (1976). The majority uses these two decisions in denying relief as to the appellant's claims relating to the possibility of racial prejudice in the jury selection process. I agree with the ultimate result that no prejudice has been shown in this particular record.

In *Commonwealth v. Futch, supra,* I expressed my disagreement in a concurring opinion. *See Commonwealth v. Futch, supra,* (Nix, J., Concurring Opinion, filed January 30, 1981). While I did not participate in *Commonwealth v. Jones, supra,* I do not adhere to the blanket statement that a jury panel selection process, where the sole source of perspective jurors is obtained from the use of voter registration rolls may not be found offensive, even though an identifiable racial group is significantly proportionately smaller on the voter registration rolls than its proportion to the general population. There are too many other easily accessible methods for selecting prospective jurors from all segments of the community to permit the exclusive use of a means which is inherently suspect. Again, I find that there is no indication of such a problem in this particular record.