503 A.2d 921

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ronald GRAY, Appellant.**

Supreme Court of Pennsylvania.

Argued May 17, 1985.

Decided Dec. 11, 1985.

As Amended Feb. 5, 1986.

Alan Ellis, David M. McGlaughlin, Philadelphia, for appellant.

Brett O. Feese, Douglas M. Engelman, William P. Carlucci, Asst. Dist. Attys., Williamsport, for appellee.

Robert A. Graci, Media, amicus curiae.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

This case requires us to determine whether the United States Supreme Court's decision in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), adopting a "totality of the circumstances" standard under the federal

constitution in analyzing probable cause for search warrants based on information received from confidential informants, also meets the requirements of Article I, Section 8 of our Pennsylvania Constitution. Appellant was convicted of possession of marijuana with intent to deliver in violation of Section 13(a)(30) of the Act of April 14, 1972, P.L. 233, No. 64, *as amended,* 35 P.S. § 780–113(a)(30). Superior Court affirmed the conviction and we granted appellant's petition for allowance of appeal. 322 Pa.Super. 37, 469 A.2d 169. Appellant's sole claim is that the search warrant in this case was defective under the standards set out by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). He claims that Superior Court erred in analyzing the warrant under the standards of *Illinois v. Gates, supra,* because *Gates* should not be applied retroactively. He also urges us to readopt the *Aguilar-Spinelli* standards under the Pennsylvania Constitution. We believe that the totality of the circumstances approach is more in line with the current state of the law, and under general common-law principles it should apply to all pending cases which have not yet been finally determined. Thus, we adopt it under our Constitution and affirm appellant's conviction.

Several confidential informants told police that appellant and his girlfriend had approximately twenty pounds of marijuana at their residence. On January 27, 1981, the police obtained a search warrant for the premises and two vehicles, one of which was at the home. The probable cause allegations in the accompanying affidavit are the only source of controversy in this case. Because of the importance of this issue we set out those allegations in full:

On 27 January 1981 a confidential informant related the following information to your affiant:

Between 23 January 1981 and 27 January 1981 the confidential informant # 1 was at the residence of Ronald Gray, specifically described above. At the time the informant was present the informant personally saw approxi-

mately 20 pounds of marijuana. The informant further related that he had seen marijuana in the automobiles described above.

Your affiant believes the confidential informant to be reliable for the following reasons: Two other confidential informants gave confirming information. In addition Trp. Thomas R. Scales confirmed information.

On 16 January 1981 your affiant spoke with confidential informant # 2. At this time informant # 2 related that RONALD GRAY is one of the major drug distributors in Lycoming County. Informant # 2 is believed to be reliable because he has given information relating to Laughlin Jennings who is presently under criminal charges; Regina Webster and Curtis Missien who are presently under criminal charges; and David Fryday who is presently under criminal charges (the information relating to Fryday confirmed in a statement by Gina Brown who related that she purchased her drugs from Fryday). The informant # 2 stated that Fryday would be found in Wellsboro, Pa. as Fryday had left Williamsport. On 27 January 1981 Fryday was arrested in Wellsboro.

On 19 January 1981 District Attorney Kenneth D. Brown and Trp. John J. Monahan related the following to your affiant:

On 18 January 1981 Mr. Brown and Trp. Monahan spoke with confidential informant # 3. At this time confidential informant # 3 related that RONALD GRAY is one of the largest drug dealers in Lycoming County. Informant # 3 related that he had some contact relative to the purchase of drugs with Gray.

On 27 January 1981 Trp. Thomas R. Scales related the following to your affiant:

During the fall of 1978 Trp. Scales had set up a transaction with Gray to purchase (2) cases of morphine from RONALD GRAY. During the course of the transaction, which took place in a cabin off Leg.Rte. 41028, a phone call came stating that there were police in the area.

Gray then refused to complete the transaction at that time. This information is contained in P.S.P. reports.

On 27 January 1981 when confidential informant # 1 related the information he was under oath.

On 27 January 1981 Trp. James Carey related the following information to your affiant:

On 27 January 1981 Trp. Carey in the presence of Ptl. Mark McCracken (South Williamsport Police) and confidential informant # 1 went to the residence of RONALD GRAY. At that time Trp. Carey located the above described home and the vehicles. The vehicles were present at the location described by the confidential informant.

On 27 January confidential informant # 1 further related that he had contacted Gray concerning the marijuana between 25 January 1981 and 27 January 1981. At this time the informant # 1 stated that Gray said he still had marijuana.

Search Warrant and Affidavit dated January 27, 1981.

The police attempted to obtain appellant's consent to the search by asking him to accompany them while they executed the warrant. After appellant refused, the police went to appellant's home, served the search warrant, and began their search. They uncovered a total of nineteen plastic bags with about one pound of marijuana in each. Drug paraphernalia was found inside the house. The search of the second car produced no evidence used at trial.

Appellant filed an omnibus pre-trial motion in which he asserted that the evidence from this search should have been suppressed because the warrant was defective under the current state of the law. The court denied this portion of the motion, finding that the allegation of probable cause was sufficiently reliable. Appellant was tried and convicted of possession with intent to deliver.

Superior Court affirmed appellant's conviction. It stated that because the allegation of probable cause was sufficient under the relaxed standard of *Illinois v. Gates, supra,* the

motion to suppress was properly denied.[1] This appeal follows.

Until 1983, the generally accepted standard for reviewing affidavits of probable cause supporting a search warrant based on information provided by confidential informants came from the United States Supreme Court cases *Aguilar v. Texas, supra,* and *Spinelli v. United States, supra.* Those cases required a warrant to pass two specific tests, under which the issuing authority had to be able to see, on the face of the affidavit of probable cause, both the informant's basis for his knowledge and independent facts showing the reliability of the informant. *Commonwealth v. Stamps,* 493 Pa. 530, 427 A.2d 141 (1981) (plurality); *Commonwealth v. Simmons,* 450 Pa. 624, 301 A.2d 819 (1973); Pa.R.Crim.P. 2003(a).

The warrant in this case fails the *Aguilar-Spinelli* tests because no one of the parts which make up its whole meets both the basis of knowledge test and the test of the particular informant's reliability. The information from Informant No. One satisfies the basis of knowledge test since the affidavit states that this informant "personally saw" marijuana in the cars described in the search warrant. This information was not stale as the drugs were seen during the four-day period immediately preceding the application for the warrant. *See Stamps, supra* (evidence of possession of large quantities of drugs within fourteen days is not stale).

However, the affidavit does not satisfy the *Aguilar-Spinelli* standards of demonstrating the reliability of this particular informant. It states only that two other confidential informants gave similar information, and that a named trooper confirmed it. Thus, there is no independent demonstration of the reliability of Informant No. One. His reliability is wholly dependent on that of the other informants.

---

1. Superior Court addressed several other issues which were not raised in this Court. Thus, our review is limited to the validity of the warrant.

Conversely, Informant No. Two's statement that appellant was a major distributor of drugs in the area does not independently satisfy the basis of knowledge prong of the two-part test. There is no indication that the informant knew about the drugs in appellant's car, and, although he had given credible information regarding other current prosecutions, there is nothing to show any specific information about appellant's current activity. His past reliability is insufficient, by itself, to establish probable cause. *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973). Therefore, this informant's statement that appellant is a drug distributor does not independently support a finding of probable cause and does not confirm the other information the affidavit sets out under the *Aguilar-Spinelli* analysis tests, as contrasted with the *Gates* test of synthesis.

Similarly, Informant No. Three does not bolster the credibility of Informant No. One. The application for the warrant states that No. Three knows appellant is a drug distributor, and that he had "some contact relative to the purchase of drugs with [appellant]." This may provide a sufficient basis of knowledge, but it does not demonstrate this third informant's reliability. Consequently, application of the two-pronged *Aguilar-Spinelli* analytical approach to the various pieces of information in the affidavit leaves us without a basis to believe that appellant currently possessed drugs in his car.

Finally, the trooper's statement that he arranged to buy drugs from appellant over two years before does not independently demonstrate the first informant's reliability. These allegations establish only that appellant was a known drug dealer. Only Informant No. One, whose reliability is not independently shown, had direct knowledge of the current possession, and the confirming information by informants whose reliability does appear was as to appellant's status as a drug dealer. That status, standing alone, is insufficient to justify this search. *See Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582, *cert. denied*, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975); *Commonwealth v.*

*Gullett,* 459 Pa. 431, 329 A.2d 513 (1974), applying the *Aguilar-Spinelli* two-pronged test. Thus, the warrant fails under the *Aguilar-Spinelli* standards.

We therefore turn to the propriety of adopting the standards of *Illinois v. Gates, supra,* as sufficient under Article I, Section 8 of the Pennsylvania Constitution. In *Gates,* the United States Supreme Court decided that its prior holdings creating "tests" for determining whether or not probable cause existed ran contrary to the notion of probable cause as based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." 462 U.S. at 231, 103 S.Ct. at 2328 (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 [1949]). The Court also noted that:

the direction taken by decisions following *Spinelli* poorly serves "the most basic function of any government": "to provide for the security of the individual and of his property." *Miranda v. Arizona,* 384 U.S. 436, 539, 86 S.Ct. 1602, 1661, 16 L.Ed.2d 694 (1966) (White, J., dissenting). The strictures that inevitably accompany the "two-pronged test" cannot avoid seriously impeding the task of law enforcement.... If, ... that test must be rigorously applied in every case, anonymous tips would be of greatly diminished value in police work. Ordinary citizens, like ordinary witnesses, see Federal Rules of Evidence 701, Advisory Committee Note (1976), generally do not provide extensive recitations of the basis of their everyday observations. Likewise, ... the veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable. As a result, anonymous tips seldom could survive a rigorous application of either of the *Spinelli* prongs. Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise "perfect crimes." While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard

that leaves virtually no place for anonymous citizen informants is not.

462 U.S. at 237–38, 103 S.Ct. at 2331–32. The Court stated its new test for analyzing warrants:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed." *Jones v. United States,* [362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)].

*Id.* at 238–39, 103 S.Ct. at 2332.

We have looked at this test before, and have called it "more practical." *Commonwealth v. Chandler,* 505 Pa. 113, 119, 477 A.2d 851, 853 (1984). In addition, we have always held that probable cause determinations must be based on common sense non-technical analysis. *Stamps, supra; Commonwealth v. Edwards,* 493 Pa. 281, 426 A.2d 550 (1981); *Commonwealth v. Muscheck,* 460 Pa. 590, 334 A.2d 248 (1975); *see also United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Heretofore we have not been presented with a factual background requiring us to determine whether we should reject the *Aguilar-Spinelli* standards. In this case, however, the warrant fails these tests and we must reach the *Gates* issue in order to decide it. This Court is no longer bound by *Aguilar-Spinelli* as a matter of federal constitutional law. *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) *(per curiam).* Therefore, our prior decisions, based on their two-pronged test, are no longer authoritative. While we can interpret our own constitution to afford defendants greater protections than the federal constitution does, *see, e.g., Commonwealth v. Sell,* 504 Pa. 46, 63–64, 470 A.2d 457, 467 (1983) (collecting cases), there

should be a compelling reason to do so. *See id.,* 504 Pa. at 70, 470 A.2d at 470 (Hutchinson, J., dissenting). In *Chandler, supra,* we already noted that the *Gates* analysis appears more practical. That this is so is even more plain on this record. Besides, there is no substantial textual difference between the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution that would require us to expand the protections afforded under the federal document.

■ We do not find persuasive the reasoning applied by other states in rejecting *Gates* and adopting *Aguilar-Spinelli* under state constitutions. *See, e.g., State v. Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985); *Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548 (1985) (on remand from the United States Supreme Court); *State v. Jackson,* 102 Wash.2d 432, 688 P.2d 136 (1984). Those cases rejected *Gates* as too amorphous, claiming it was practically equivalent to no standard at all. We, however, believe that a totality of the circumstances approach is as workable here as in those other areas of criminal procedure where a common-sense, practical approach is indicated. Thus, we adopt the *Gates* standard under the Pennsylvania Constitution.

■ Under the *Gates* totality of the circumstances approach, the warrant in this case is valid. Informant No. One states specifically that he saw a substantial quantity of marijuana in appellant's car within the four-day period preceding the application for the warrant. Although the affidavit does not show on its face that this informant is especially credible or reliable, the whole affidavit contains facts consistent with it. Their total effect confirms it with the ring of truth which is sufficient for men of common sense to conclude that a search is reasonable and justified by probable cause. Three people, one police officer and two confidential informants, have stated that appellant is a known drug dealer. A third confidential informant says he saw twenty pounds of marijuana and that appellant carried this quantity in his car. Viewed together, these allegations

raise a fair inference that appellant was in possession of a substantial quantity of a controlled substance. Thus, there was probable cause for the issuance of the search warrant under *Gates*.

■   Alternatively, appellant claims that he is entitled to rely on the *Aguilar-Spinelli* test and that thus *Gates* is inapplicable to this case because it can only be given prospective effect in Pennsylvania. Where not limited by constitutional considerations, the general rule is that all decisions are to be applied retroactively to cases on direct appeal. *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). *See also United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); *Commonwealth v. Geschwendt*, 500 Pa. 120, 454 A.2d 991 (1982) (plurality). The United States Supreme Court has not indicated disagreement with this general rule. Although that Court, in *Massachusetts v. Upton, supra,* disagreed with the Supreme Judicial Court of Massachusetts's holding that *Gates* did not represent a clear break with the past, it reversed the Massachusetts Court's holding that *Gates* was improperly applied to *Upton*, whose acts and trial occurred before *Gates*. Thus, the mandate of the United States Supreme Court in *Upton* applied *Gates* retroactively.[2]

■   Indeed, any argument that a defendant is entitled to rely on *Aguilar-Spinelli* in engaging in criminal conduct is almost ludicrous, and appellant's effort, in apparent recognition of that difficulty, to avoid it on the basis of possible trial strategy is not persuasive. The purpose of the Fourth Amendment, along with the Fifth and Sixth, as has been so often stated, is not to shield the guilty, but to protect the innocent from official misconduct. *See, e.g., Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, *reh'g. denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19

---

**.2.**   On remand, the Supreme Judicial Court of Massachusetts adopted *Aguilar-Spinelli* under the Massachusetts Constitution. *Commonwealth v. Upton*, 394 Mass. 363, 476 N.E.2d 548 (1985).

L.Ed.2d 576 (1967); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). We would lose sight of this rationale and stand the Bill of Rights on its head if we were to hold that a person planning criminal conduct can justifiably rely on the expansive decisions of our courts creating constitutional rights for the protection of the innocent which we later determine were too broadly stated. This thought was embodied in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), which stated:

Any interest in maintaining the status quo that might be asserted by persons who may have structured their business of distributing narcotics or other illicit substances on the basis of judicial precedents clearly would not be legitimate.

456 U.S. at 824 n. 33, 102 S.Ct. at 2172 n. 33.

For the most part, the cases in which retroactive application has been limited are cases in which the courts expanded the constitutional rights of the accused. *See United States v. Peltier*, 422 U.S. 531, 547 n. 5, 95 S.Ct. 2313, 2322 n. 5, 45 L.Ed.2d 374 (Brennan, J., dissenting) (collecting cases). Indeed, as the Ninth Circuit noted, the Supreme Court has not required prospective application of a decision limiting the exclusionary rule. *United States v. Estrada*, 733 F.2d 683, 685 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 168, 83 L.Ed.2d 103 (1984). In such cases, because of the reliance our society's organs of law enforcement place, in conducting criminal trials and investigations, upon theretofore clear prior law more narrowly stating those rights, the courts refused to apply the newly expanded rights because of the disruption it would create in society if large numbers of persons who had been found guilty under settled law were left to go free, even though the absence of the newly expanded right did not implicate the truth-determining aspect of their trials.

A person who engages in criminal conduct cannot justifiably rely upon the technicalities of court decisions interpreting constitutional rights in planning his criminal conduct. *Gates* did not create any new rights in defendants; it

merely changed the analysis of the sufficiency of the probable cause allegation in a search warrant. Thus, no defendant's reliance interests are violated, if indeed they are even applicable. A potential defendant still must fear the possibility that confidential informants will supply the probable cause necessary to support a search warrant. No purpose would be served by allowing only prospective application of *Gates.*

Because we hold that Article I, § 8 of the Pennsylvania Constitution is satisfied by the *Gates* standard, and because we hold that the warrant in this case satisfied the *Gates* standard, we must affirm appellant's judgment of sentence.

Consequently, the order of Superior Court is affirmed.

## JUDGMENT

ON CONSIDERATION WHEREOF, It is now hereby ordered and adjudged by this Court that the Order of the Superior Court is affirmed.

NIX, C.J., files a concurring opinion in which ZAPPALA, J., joins.

LARSEN, J., joins in the majority opinion and files a concurring opinion.

McDERMOTT and PAPADAKOS, JJ., join in the majority opinion and also join in LARSEN, J., concurring opinion.

FLAHERTY, J., did not participate in the consideration or decision of this case.

NIX, Chief Justice, concurring.

While I agree with the result reached by the majority, I am not persuaded that the "totality of the circumstances" test adopted by the United States Supreme Court as a matter of federal constitutional law in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), is an adequate standard for determining the existence of probable cause under Article I, section 8 of the Pennsylvania Constitution. The Federal Constitution at best defines only

the minimum protection which must be afforded fundamental rights. Within our federal system of government, state constitutions must be viewed as independent, and indeed, primary sources of such protection. *See e.g.,* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489 (1977). It is the responsibility of the state court to define the scope of protection of the fundamental rights of all citizens mandated by the state's constitution. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The majority, in its rush to embrace the *Gates* standard, abdicates that responsibility by focusing only on the convenience in application of the new standard without giving due consideration to the adequacy of the protection to be afforded to one of our most basic rights.

Moreover, the instant case does not, in my view, present a factual situation which either demonstrates the impracticality of the *Aguilar-Spinelli* standard or necessitates its rejection. It is well established that the statements of different confidential informants may corroborate each other. *See Commonwealth v. Jones,* 506 Pa. 262, 484 A.2d 1383 (1984); *Commonwealth v. Reel,* 499 Pa. 381, 453 A.2d 923 (1982); *Commonwealth v. Sudler,* 496 Pa. 295, 436 A.2d 1376 (1981); *Commonwealth v. Edwards,* 493 Pa. 281, 426 A.2d 550 (1981); *Commonwealth v. Mamon,* 449 Pa. 249, 297 A.2d 471 (1972). Here, the statement of the first informant that he had seen marijuana in appellant's residence and cars was corroborated by information supplied by two other informants that appellant was a major drug dealer. The reliability of the first informant's statement was also bolstered by the statement in the affidavit that subsequent police observation revealed that the automobiles he had described were located where he said they would be.

Thus, as the trial court correctly concluded, both prongs of the *Aguilar-Spinelli* test was satisfied. The majority's predicate for discarding that salutary standard, therefore, is nonexistent.

ZAPPALA, J., joins in this concurring opinion.

LARSEN, Justice, concurring.

Because we are required to follow the United States Supreme Court's interpretations of the United States Constitution, Pennsylvania has, until now, been required to apply the unrealistic two-prong test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). This has resulted in many cases being decided by crabbing over-technicalities. Now that the States have a greater choice in the matter, we are at liberty to adopt the most common sense approach. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), is the answer, with its more realistic view of the world. For that reason, even though some sister states have continued to apply the *Aguilar-Spinelli* test under their state constitutions, I join the majority in adopting the *Gates* decision and rationale.

McDERMOTT and PAPADAKOS, JJ., join in this concurring opinion.