J-S46005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRIAN DANIELS, | |
| Appellant | No. 1286 EDA 2015 |

Appeal from the Judgment of Sentence Entered December 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012667-2011

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 09, 2016**

Appellant, Brian Daniels, appeals from the judgment of sentence of 4 to 8 years' incarceration, followed by 5 years' probation, imposed after he was convicted of aggravated assault, simple assault, recklessly endangering another person (REAP), possessing an instrument of crime (PIC), and several firearm offenses. After careful review, we affirm.

The trial court summarized the evidence presented at Appellant's non-jury trial, as follows:

> On July 10, 2011, an argument occurred between neighbors Latisha Dudley and Thea Knight on the 4500 block of Hurley Street. Latisha Dudley and her daughter confronted Thea Knight about a parking ticket Dudley received, blaming Knight for the ticket and insisting she pay it. Knight then went back inside her house and called her boyfriend, Troy Taylor (a.k.a. Lionel

_____

[*] Retired Senior Judge assigned to the Superior Court.

Tyson). Taylor returned home and also argued with Dudley. Dudley threatened to break the windows and slash the tires of Taylor and Knight's van. Taylor threatened to retaliate by pouring sugar in her gas tank.

The following day, Taylor and Knight returned from a doctor's appointment to find their van had been vandalized. A tire had been slashed, the front passenger window was broken, and the radio console was missing. Knight brought her children inside, and Taylor walked to the end of the block to confront Appellant, Dudley's boyfriend. In the course of the confrontation, Appellant attempted to hit Taylor in the face, but missed. Taylor then swung at and hit Appellant. The fight was quickly broken up by other men in the neighborhood, and Taylor returned to his van to further inspect the damages. Knight watched the altercation from her house and saw Appellant walking back to his house with blood around his eye. When Appellant exited his house again he was holding a black 9-millimeter [(9-mm)] gun. Taylor testified that as Appellant was walking down the front steps, he was loading bullets into the gun. Appellant lifted his gun, took a step or two towards Taylor, and then fired at Taylor. Taylor ducked behind the van and moved around it to avoid being shot. Appellant followed him around the van and fired his gun two more times at Taylor. Taylor was not struck by any bullets. After firing three shots, Appellant returned to his house. Knight witnessed this from her home across the street and called the police.

Officer William Stephan and his partner responded to the report of a shooting on the 4500 Block of Hurley Street at 6:45 p.m. Taylor was still on the street and met the officers to speak with them. Officer Stephan testified that when they initially spoke to Taylor, he was "very frazzled and excited." Taylor described the incident and the individual who had shot at him. Officer Stephan found two fired shell casings on top of Taylor's van, and observed damage to the vehicle. Upon learning that Appellant had returned to his house following the shooting, Officer Stephan and his partner secured the house. Officer Stephan called his supervisor and suggested the premises be held for a barricade.

SWAT officers arrived on the scene and began establishing a barricade around Appellant's house at about 7:00 p.m. At approximately 7:35 p.m., they entered the building. However,

- 2 -

nobody was found inside the home at that time. No weapons were found inside the home by SWAT.

Detective Michael Alers was assigned to investigate the shooting and also arrived at the scene at about 7:00 that evening. He took photographs of the scene and recovered the fired 9-[mm] casings. In the course of his investigation into the shooting, Detective Alers also applied for two search warrants: one for a 2000 Ford SUV registered to Latisha Dudley, and another for a Lexus registered to Appellant. From the vehicle registered to Latisha Dudley, Detective Alers recovered the vehicle's insurance information, which listed both Ms. Dudley's and Appellant's names, the vehicle registration, several traffic citations, and a box of ammunition. The box of ammunition contained eleven live rounds and ten capped rounds (also described as blanks). The box was labeled "38 special" but contained "assorted ammo" according to Detective Alers.

At trial, Appellant presented an alibi witness, Thomas Daniel, who worked with Appellant at the time of the shooting. Mr. Daniel also testified that he has been dating Appellant's mother for "fifteen or so years." Thomas Daniel works in air conditioning and refrigeration, and at the time of the shooting he had been working with Appellant and helping him secure a job in the same field. At trial, Mr. Daniel testified that on the day the shooting occurred, Appellant was in the Bronx, New York, accompanying him on several jobs. He referred to two job tickets, which listed work being done on July 11, 2011, from 3:00 to 5:35 in the afternoon. Mr. Daniel testified that Appellant was with him during this time period in the Bronx. Mr. Daniel also testified that he did not see Appellant after 6:45 that evening until he woke up the next morning. Latisha Dudley, Appellant's girlfriend, also testified that she had dropped him off at the train station the day before the shooting to go to New York.

Mr. Daniel was interviewed by Detective Alers on September 16, 2013. At that time he stated he had no documentation to reflect that Appellant had made repairs or been present in New York that day. He stated that since he worked with several people who were "off the books," he did not keep attendance records. Latisha Dudley also gave a statement to Detective Alers on September 16, 2013. She had not spoken to the detective about taking Appellant to the train station prior to this statement.

Trial Court Opinion (TCO), 9/15/15, at 3-6 (citations to the record omitted).

Based on this evidence, the trial court convicted Appellant of aggravated assault, 18 Pa.C.S. § 2702(a); simple assault, 18 Pa.C.S. § 2701(a); REAP, 18 Pa.C.S. § 2705; PIC, 18 Pa.C.S. § 907(a); carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1); carrying a firearm in public in Philadelphia, 18 Pa.C.S. § 6108; and possession of a firearm by a person prohibited, 18 Pa.C.S. § 6105(a)(1). On December 11, 2014, Appellant was sentenced to an aggregate term of 4 to 8 years' imprisonment, followed by 5 years' probation. He filed a timely post-sentence motion, which was denied by operation of law on April 21, 2015. Appellant then filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. Herein, he presents four issues for our review:

> I. Whether the trial court abused its discretion and committed reversible error when the court questioned defense witnesses in an unduly protracted manner.
>
> II. Whether the trial court erred in denying the motion to suppress where the police executed a search warrant that lacked probable cause.
>
> III. Whether the evidence was insufficient as a matter of law such that no reasonable fact finder could have found Appellant guilty of all the charges.
>
> IV. Whether the findings of guilt are against the weight of the evidence.

Appellant's Brief at 9.

Appellant first contends that the trial court erred when it "conducted an unduly protracted cross-examination, akin to an interrogation," of defense witnesses Thomas Daniel and Latisha Dudley. Appellant's Brief at 14. Before delving into the merits of Appellant's argument, we must address the trial court's conclusion that Appellant waived this claim by failing to raise the issue at trial. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In reaching this conclusion, the trial court initially acknowledged that,

> [i]n *Commonwealth v. Hammer*, [494 A.2d 1054 (Pa. 1985),] the Supreme Court concluded that justice would not be served by strictly enforcing the waiver doctrine where the record revealed that objection by counsel would be meaningless and, in fact, would intensify judicial animosity. … [*Id.* at] 1060…. In *Hammer*, the Supreme Court overlooked defense counsel's failure to object to the trial judge's questioning of witnesses and addressed the substantive issue of whether such questioning constituted reversible error. *Id.*

TCO at 15. However, the trial court then explained why *Hammer* did not compel it to disregard Appellant's failure to object to its allegedly improper questioning of defense witnesses, stating:

> Subsequently, however, in *Commonwealth v. Grant*, [813 A.2d 726 (Pa. 2002),] our Supreme Court abrogated *Hammer*, indicating that, generally, the appellate courts will not overlook defense counsel's failure to object and, with regard thereto, an appellant may present claims of ineffective assistance of counsel in a PCRA. … [*Grant*, 813 A.2d at] 738…. Under these circumstances, this court is constrained to find Appellant's … claim waived.

*Id.*

On appeal, Appellant concedes that he did not object to the questioning by the court that he now challenges herein. He also acknowledges that *Grant* overruled *Hammer*, but nevertheless argues that this Court should disregard his failure to object because the *Grant* Court stated that waiver will 'generally' not be overlooked. Appellant explains:

> [I]f the Supreme Court meant to say that appellate courts will ALWAYS overlook defense counsel's failure to object[,] then [the Court] would have said always instead of using the term [']generally.['] The Court's use of this terminology allows the appellate court to review instances on a case by case basis and not to find a blanket waiver in instances where defense counsel did not object to the trial court's questioning.
>
> Appellant asks this Honorable Court to find that the waiver doctrine does not apply under these circumstances.

Appellant's Brief at 13-14 (capitalization emphasis in original).

Even if we accept that *Grant* supports a 'case-by-case' analysis of waiver, Appellant does not provide any explanation of why the circumstances *of this case* justify our overlooking his failure to object to the court's questioning. Instead, Appellant suggests that we should disregard his failure to object simply because the error he alleges was the court's questioning of certain witnesses. In our view, Appellant is asking us to apply the *Hammer* exception, which we cannot do in light of *Grant*.[1] Thus, we

---

[1] Moreover, we note that even if *Hammer* had not been abrogated by *Grant*, Appellant does not explain how the record demonstrates that his objection would have been meaningless and/or intensify judicial animosity, so as to warrant application of the *Hammer* exception. *See Hammer*, 494 A.2d at 1060 ("On this record, whereas it appears that objection would be

*(Footnote Continued Next Page)*

agree with the trial court that Appellant's failure to object to the court's questioning of defense witnesses constitutes waiver of his challenge to that questioning herein. *See* Pa.R.A.P. 302(a).

Next, Appellant argues that the trial court erred by denying his pretrial motion to suppress evidence - namely, the box of .38 caliber ammunition - discovered inside Latisha Dudley's vehicle. Appellant argues that the search of Dudley's vehicle was illegal because the affidavit underlying the search warrant for her car did not provide probable cause. We begin by noting:

> Our standard of review for an appeal denying a motion to suppress is well settled.
>
> > In reviewing the decision of a suppression court, we must ascertain whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. We will consider only the evidence of the Commonwealth and that defense evidence which remains uncontradicted when read in the context of the entire record.
>
> *Commonwealth v. Johnson*, 734 A.2d 864, 869 (Pa. Super. 1999).
>
> "In determining whether the warrant is supported by probable cause, the magistrate may not consider any evidence outside the four-corners of the affidavit." *Commonwealth v. Sharp*, 453 Pa. Super. 349, 683 A.2d 1219, 1223 (1996) (citations omitted).
>
> > The legal principles applicable to a review of the sufficiency of probable cause affidavits are well settled. Before an issuing authority may issue a constitutionally valid search

*(Footnote Continued)* ─────────────

meaningless to satisfy the reasons for raising objection and, as further reflection by this record, indeed intensified judicial animosity, justice is not served by the strict application of the waiver doctrine.").

warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a 'totality of the circumstances' test as set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). A magistrate is to make a 'practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' The information offered to establish probable cause must be viewed in a common sense, non-technical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

*Commonwealth v. Dean*, 693 A.2d 1360, 1365 (Pa. Super. 1997) (citations, quotations, and emphasis omitted).

*Commonwealth v. Ryerson*, 817 A.2d 510, 513–14 (Pa. Super. 2003).

Here, the affidavit of probable cause for the search of Dudley's vehicle is not contained in the certified record, Appellant's brief, or the reproduced record he filed with this Court. "It is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Hrinkevich v. Hrinkevich*, 676 A.2d 237, 240 (Pa. Super. 1996) (citation omitted). Based on Appellant's failure to provide this Court with the affidavit of probable cause that underlies his challenge to the search warrant for Dudley's vehicle, we could deem his second issue waived. *See id.*

Fortunately for Appellant, the Commonwealth attached to its brief a copy of the affidavit of probable cause; thus, because we are able to assess that document, we will not consider Appellant's issue waived. However, for the reasons stated *infra,* our review of the affidavit reveals no error in the magistrate's finding of probable cause to search Dudley's vehicle.

In the affidavit, Detective Alers (the affiant) stated the details about the fight that preceded the shooting, including that it started over a parking ticket, and that Dudley was present at the scene and involved in the dispute. *See* Commonwealth's Brief (Exhibit 2, Affidavit of Probable Cause, at 2). The detective also explained the circumstances of the shooting, and stated that afterwards, Appellant reentered his home armed with the gun. *Id.* Detective Alers stated that when the SWAT team entered Appellant's and Dudley's home, neither of them were found inside, and no weapon was recovered. *Id.* As the scene was being processed by police, two fired cartridge casings were found, supporting Troy Taylor's report that he had been shot at. *Id.* Police also confirmed that a parking citation had been issued to Dudley's vehicle, further confirming Taylor's and Knight's story about how the altercation began. *Id.*

Additionally, Detective Alers explained in the affidavit that, while police were still present at the scene, Appellant arrived driving a black Lexus. *Id.* Appellant's car was immediately seized so police could obtain a warrant to search that vehicle. Additionally, Dudley arrived at the scene driving her

vehicle, which was also seized. In the affidavit, Detective Alers stated that Dudley "refused to cooperate with the investigation." *Id.*

Based on the totality of these facts, the magistrate reasonably concluded that there was a "fair probability that contraband or evidence of a crime" would be found in Dudley's vehicle, namely, the firearm used by Appellant to shoot at Taylor. *Ryerson*, 817 A.2d at 514. Dudley was present at the scene during the initial dispute, and Appellant fled into their home armed with the gun afterwards. Because the SWAT team did not find Appellant, Dudley, or any firearm in their home, it was reasonable to suspect that Dudley or Appellant could have secreted the weapon in one of their vehicles. Further, Dudley's uncooperative attitude when she arrived at the scene bolstered the probability that she was hiding something in her car. Therefore, we conclude that the affidavit of probable cause was sufficient to justify the search warrant for Dudley's vehicle, and the trial court did not err in denying Appellant's motion to suppress the evidence recovered therefrom.[2]

_____

[2] Because we conclude that the information set forth in the affidavit provided probable cause for the search warrant, we need not address Appellant's contention that "the trial court incorrectly and improperly relied upon information sources outside of the warrant, thus erroneously denying [t]he motion to suppress." Appellant's Brief at 19. Even if the court did commit an error in this regard, we may affirm the trial court "on any valid basis, as long as the court came to the correct result...." *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 577 n.4 (Pa. Super. 2005) (citations omitted).

In Appellant's next issue, he argues that the evidence was insufficient to support his convictions.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno****, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell****, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

Here, Appellant has set forth in his brief the definitions of the various crimes for which he was convicted, but he does not explicitly identify which element(s) of those crimes the Commonwealth failed to prove. Instead, he simply stresses that the only witnesses who testified that he committed the shooting, *i.e.* Troy Taylor and Thea Knight, were incredible and had ample motive to fabricate their testimony. Appellant also emphasizes that there was no physical evidence, such as fingerprints or DNA, linking him to the spent shell casings found at the scene, and no firearm was ever recovered.

Initially, Appellant's assertions pertaining to Taylor's and Knight's credibility "go to the weight, and not the sufficiency, of the evidence." ***Commonwealth v. Gaskins***, 629 A.2d 224, 227 (Pa. Super. 1997). Therefore, we will not assess these arguments in Appellant's sufficiency-of-the-evidence issue. Moreover, evidence of guilt is not insufficient merely

because there is a lack of physical evidence; rather, "[i]t is well established in Pennsylvania that circumstantial evidence alone may be sufficient to determine commission of a crime and convict the accused of it." *Commonwealth v. Cox*, 333 A.2d 917, 918 (Pa. 1975) (citation omitted). Consequently, Appellant's arguments are inapplicable and/or unavailing.

Moreover, our review of the record supports the trial court's assessment of Appellant's sufficiency claim. The court states:

> Here, eyewitness testimony established that Appellant used a firearm to shoot at the complainant, Troy Taylor, three times following a confrontation. Appellant was seen exiting his home holding a black [9-mm] handgun and loading bullets into it prior to firing. Two spent shell casings were found by police on the complainant's vehicle. The vehicle also had damage consistent with having been hit with bullets.
>
> Although the firearm itself was not recovered, the circumstantial evidence, as well as the testimony from witnesses, was sufficient to show that Appellant had possessed and used a firearm on a public street at the time of the shooting. … There was a stipulation at trial that Appellant was ineligible to possess a firearm under 18 Pa.C.S.A. § 6105. This evidence, taken together, makes it reasonable for the fact-finder to conclude that Appellant was guilty of the firearms violations as charged.

TCO at 14. The court's analysis is supported by the record, and Appellant's unconvincing and/or irrelevant arguments to the contrary do not demonstrate that the evidence was insufficient to support his convictions. Accordingly, Appellant's third issue is meritless.

Next, Appellant asserts that the court's verdict is contrary to the weight of the evidence.[3]

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-1136 (Pa. 2011) (citations and internal quotation marks omitted).

Preliminarily, in Appellant's Rule 1925(b) statement, he presented four claims challenging the weight of the evidence. In two of those issues, Appellant asserted that the court failed to give proper weight to his alibi evidence. *See* Pa.R.A.P. 1925(b) Statement, 7/14/15, at ¶¶ 3 & 4. In his second two weight claims, Appellant stated that he was challenging:

_____

[3] The Commonwealth claims that Appellant waived his weight-of-the-evidence challenge by failing to raise it in a post-sentence motion. Our review of that document reveals that Appellant stated, "The evidence presented by the Commonwealth lacked sufficient credibility to be worthy of belief." Post-Sentence Motion, 12/22/14, at 2 (unnumbered). As attacks on the credibility of the evidence are properly characterized as weight claims, *Gaskins*, 629 A.2d at 227, we will deem this statement as constituting a challenge to the weight of the evidence.

5. Whether the verdict was against the weight of the evidence because the court did not give the proper weight to the discrepancy that live bullets were never recovered from the front of 4533 Hurley Street despite testimony as to their existence, no testimony as to their recovery from the petitioner, any other civilian, or police officers despite the area being secured within minutes of the incident. The Commonwealth failed to sustain its burden to prove [Appellant's] guilt beyond a reasonable doubt.

6. Whether the verdict was against the weight of the evidence because the court did not give the proper weight to the discrepancy of [Troy Taylor's] written statement and sworn preliminary hearing testimony and his testimony at trial, including but not limited to his testimony of the events preceding the shooting. The Commonwealth failed to sustain its burden to prove [Appellant's] guilt beyond a reasonable doubt.

*Id.* at ¶¶ 5 & 6.

On appeal, Appellant presents numerous other arguments in support of his weight claim that we deem waived for our review. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").[4] In regard to the claims Appellant did preserve in his concise statement, we

---

[4] For instance, Appellant devotes a large majority of his argument to pointing out inconsistencies in the testimony of Thea Knight and Troy Taylor. *See* Appellant's Brief at 25-27. Even if Appellant preserved these claims, many of the discrepancies he cites between Knight's and Taylor's testimony regard corollary issues that clearly did not outweigh, in the trial court's mind, the witnesses' consistent claims that Appellant was the person who shot at Taylor. *See id.* (Appellant's citing, *inter alia*, Knight's and Taylor's differing testimony about whether Appellant was loading the gun when he emerged from his house, or just holding it; whether Appellant fled back inside his home through the back of the house, or through the front door; and whether there was a television in Dudley's car that was destroyed or stolen).

- 14 -

ascertain no abuse of discretion in the court's rejecting them. In doing so, the court explained:

> In the instant case, multiple witnesses established that there had been an ongoing feud between Appellant's girlfriend and [Taylor's] girlfriend regarding parking in their neighborhood. Threats exchanged by the parties eventually led to Appellant and [Taylor] getting into a brief physical altercation, which then led directly to the shooting. Both [Taylor] and his girlfriend testified that Appellant shot at [Taylor] following this confrontation. Officer testimony corroborated that the scene was consistent with a shooting, and two fired shell casings were found on the scene. Upon executing a search warrant, police found a box of bullets in a vehicle that was driven by Appellant and his girlfriend, Ms. Dudley.[5] In his defense, Appellant offered alibi witnesses who testified that he was not in Philadelphia at all on July 11, and could not be responsible for the shooting.
>
> The finder of fact is always free to determine which testimony to believe and how much weight to give testimony. *See Commonwealth v. Moore*, 648 A.2d 331, 333 (Pa. Super. 1994). While Appellant did offer an alibi witness at trial, this witness did not make a statement to police until two years after the original incident, and had no documentation to corroborate that Appellant was working with him that day. Similarly, Appellant's girlfriend, Latisha Dudley, did not tell police that Appellant was out of town on the date of the shooting until two years after the incident. Ms. Dudley was also found to have been convicted of several *crimen falsi* [offenses], which made her a

_____

[5] We note that Appellant did not preserve, in his Rule 1925(b) statement, any issue concerning the weight the court afforded to the ammunition evidence, which did not match the caliber of the gun fired in the shooting. In his brief to this Court, Appellant only mentions the non-matching calibers, but offers no argument pertaining to why the court should not have afforded any weight to the ammunition evidence. In any event, we would conclude that the testimony that Appellant was observed shooting a 9-mm gun, which was corroborated by the 9-mm shell casings found at the scene, would be sufficient circumstantial evidence - that bore sufficient weight - to support Appellant's convictions.

less credible witness compared to someone without such prior convictions.

Although no "live bullets" were recovered from the scene, several fired casings were found around [Taylor's] vehicle, which was consistent with [Taylor's] testimony. Officers on the scene also observed damage to the vehicle consistent with shots having been fired. This testimony was consistent with the testimony of [Taylor] and his girlfriend, who described Appellant chasing [Taylor] around the van and firing at him three times.

Here, the finder of fact chose to credit the testimony of [Taylor], his girlfriend, and police officers, and gave this testimony more weight than the defense witnesses. Considering the delay of the defense witnesses in coming forward with this alibi, the lack of corroboration by other evidence, and the credibility of Ms. Dudley, it is not shocking to one's sense of justice for the fact-finder to have weighed the evidence in such a manner. For the foregoing reasons, the Appellant's claims that the verdict was against the weight of the evidence must also fail.

TCO at 11-12.

As stated *supra*, the majority of Appellant's arguments on appeal address issues that were not preserved in his Rule 1925(b) statement. In regard to his preserved claims, Appellant only briefly mentions that Taylor gave inconsistent statements and testimony regarding how many shots were fired (changing from two to three), and he also points out that Taylor claimed to see Appellant dropping bullets on the ground as he loaded the gun, yet no live rounds were found at the scene. The trial court viewed these discrepancies as minor, and it did not find that they outweighed the totality of evidence demonstrating Appellant's guilt. The trial court also offered a reasonable explanation for not believing Appellant's alibi witnesses, *i.e.*, the delay in their alibi claims, their inability to offer any corroborating evidence to support the alibi, and Ms. Dudley's unreliability. Appellant has

not convinced us that the court abused its discretion in reaching these determinations.  Thus, his final issue is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2016