J-S40040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| TRAVIS HILL, | : | |
| | : | |
| Appellant | : | No. 2612 EDA 2015 |

Appeal from the Judgment of Sentence July 29, 2015
in the Court of Common Pleas of Delaware County,
Criminal Division, No(s): CP-23-CR-0005508-2013

BEFORE:  BOWES, MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 28, 2016**

Travis Hill ("Hill") appeals the judgment of sentence imposed following his conviction of two counts of robbery (threaten immediate serious bodily injury).[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural background, which we adopt for the purpose of this appeal.  **See** Trial Court Opinion, 11/20/15, at 1-7, 8-17.

On appeal, Hill raises the following questions for our review:

1. Whether the lower court erred in refusing to suppress the statement that [] Hill allegedly supplied to police[,] since it was the fruit of a seizure conducted without legal justification and in violation of his state and federal constitutional rights?

2. Whether the lower court erred in refusing to suppress the statement that [] Hill allegedly supplied to police[,] since it was the product of improper inducement, and therefore, not knowingly, intelligently, or voluntarily made?

---

[1] **See** 18 Pa.C.S.A. § 3701.

Brief for Appellant at 5.

In his first issue, Hill contends that the trial court erred by finding that the warrantless arrest of Hill was lawful, and carried out in accordance with the Pennsylvania and United States Constitutions.  *Id*. at 14.  Hill asserts that he was the subject of a custodial arrest that lacked probable cause.  *Id*. at 15.  Hill claims that the police stopped the vehicle he was traveling in by activating their emergency lights, and thereafter approached the vehicle with their guns drawn, removed Hill from the vehicle, stepped on his head or neck, handcuffed him, and transported him to the police station.  *Id*. at 16. Hill argues that, under these circumstances, a reasonable person would believe that he was under total police control, and that the police intended to take him into custody.  *Id*.  Hill contends that "parole agents were apparently not in communication with police at the time of arrest, and did not ask police to arrest Hill for parole violations."  *Id*. at 18-19.  Hill asserts that there were no exigent circumstances to justify his warrantless arrest by police before parole officers could arrive because there was no evidence that Hill had fled on previous occasions, or that he would present any difficulty in being detained.  *Id*. at 18.  Hill claims that, despite the fact that parole agents may have intended to arrest him for technical violations of his parole, his arrest by police was nevertheless illegal.  *Id*. at 19.  Hill argues that police officers do not enjoy the same authority as parole agents, who may conduct a warrantless search of a parolee's home with only a reasonable

suspicion. *Id*. Hill contends that, because the police who arrested him were not assisting parole officers, they were performing parole officer duties without lawful authority, and in the absence of exigent circumstances. *Id*. Hill asserts that the police used his alleged parole violations as an illegitimate pretext to circumvent the inconvenience of obtaining a warrant. *Id*. Hill claims that the statement he allegedly gave to police, shortly after he was taken into custody, was the result of an illegal warrantless arrest, and should have been suppressed as fruit of the poisonous tree. *Id*. at 20.

The trial court set forth the relevant law, addressed Hill's first issue, and concluded that it lacks merit. *See* Trial Court Opinion, 11/20/15, at 17-21. We agree with the sound reasoning of the trial court, which is supported by the record, and affirm on this basis as to Hill's first issue. *See id*.

In his second issue, Hill contends that his statement to police was not knowingly, voluntarily or intelligently made because police coerced him, and induced him to speak with promises of leniency. Brief for Appellant at 21. Hill asserts that, after he was arrested, police "allegedly threatened to attempt to have his fiancé evicted from her home." *Id*. at 23. Hill claims that he was thereafter processed and handcuffed to a wall at the police station. *Id*. Hill argues that he did not wish to speak to police, and that he waived his *Miranda*[2] rights under duress. *Id*. Hill contends that police warned him that he faced mandatory or enhanced penalties, and that he

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

could "save himself or limit his exposure by cooperating." ***Id***. Hill asserts that the police threatened him that his failure to cooperate would result in maximum penalties. ***Id***. at 24. Hill claims that the police then shackled him in leg irons to gain a psychological advantage and to compel Hill to incriminate himself. ***Id***. Hill points out that, shortly thereafter, he admitted his involvement in the robberies. ***Id***. Hill contends that his confession was unlawfully obtained through "police trickery," and should have been suppressed. ***Id***. at 25.

The trial court set forth the relevant law, addressed Hill's second issue, and concluded that it lacks merit. ***See*** Trial Court Opinion, 11/20/15, at 22-28. We agree with the sound reasoning of the trial court, which is supported by the record, and affirm on this basis as to Hill's second issue. ***See id***.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2016

Circulated 05/25/2016 03:05 PM

S 40040-16

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA    :    NO. 5508-13

:

v.         :

:

TRAVIS SHAWN HILL       :

John F.X. Reilly, Esquire — Deputy District Attorney for the Commonwealth
Steven M. Papi, Esquire — Attorney for Travis Hill

#### OPINION

Kelly, J.                    Date: November 20, 2015

A criminal complaint was filed on or about July 25, 2013, by Trooper Robert S. Kirby, Pennsylvania State Police, charging Travis Hill (hereinafter referred to as "Defendant" or "Hill"), *inter alia*, with Robbery (two (2) counts).[1]

A preliminary hearing was held on August 29, 2013, before the Magisterial District Court. After the Commonwealth's presentation of evidence, the presiding Magisterial District Judge held the Defendant for trial court purposes as to, *inter alia*, Robbery (two (2) counts).[2]

Defendant Hill was formally arraigned before the trial court on September 25, 2013, at which time the Office of the Delaware County District Attorney lodged against him a Criminal Information averring, *inter alia*, the following: Count 1 - Robbery (Threaten Immediate Serious Bodily Injury);[3] and Count 2 - Robbery (Threaten Immediate Serious Bodily Injury).[4]

---

[1] 18 Pa.C.S. §3701.
[2] *Id.*
[3] *Id.*
[4] *Id.*

On January 15, 2014, defense counsel[5] filed a Motion for Suppression of Evidence seeking to exclude from the prosecution's trial usage the Defendant's statement to Pennsylvania State Police investigators. *See* Motion for Suppression of Evidence.

The Defendant's attorney lodged on July 14, 2014,[6] an Amended Motion for Suppression of Evidence expanding the past filed defense exclusionary claim to include various items of physical evidence seized by Pennsylvania state troopers pursuant to a search warrant's execution. *See* Amended Motion for Suppression of Evidence.

On August 5, 2014, a hearing salient to Defendant Hill's suppression motions took place before this court. N.T. 8/5/14. At the conclusion of the hearing, the court instructed the attorneys to forward to its chambers legal memorandums in further support of their arguments.

. On September 4, 2014, the Commonwealth lodged a Motion to Re-Open Suppression Record. *See* Commonwealth's Motion to Re-Open Suppression Record.

The Defendant's counsel on September 5, 2014, submitted to the court a Memorandum of Law in Support of the Suppression Motion. *See* Memorandum of Law in Support of the Suppression Motion.

On September 10, 2014, the prosecution forwarded to the court its Memorandum of Law in Opposition to the Defense's Exclusionary Pleadings. *See* Commonwealth's Memorandum of Law.

On October 2, 2014, a hearing took place before this court concerning the Commonwealth's Motion to Re-Open Suppression Record. N.T. 10/2/14. *See also*

---

[5] On January 14, 2014, Clinton L. Johnson, Esquire, entered his appearance in the above captioned matter. *See* Entry of Appearance.

[6] Between the original suppression motion's filing and the lodging of the amended exclusionary pleading, the above-captioned matter was assigned to two (2) other jurists before age compulsory retirement and a *sua sponte* recusal finally necessitated the case's reassignment to this court. The proceeding's at bar were further delayed by at least seven (7) defense continuance applications.

2

Commonwealth's Motion to Re-Open Suppression Record. At this listing, the court granted the prosecution's motion and permitted the Commonwealth to re-open the suppression record. N.T. 10/2/14.[7]

Per an order dated October 21, 2014, the court denied the Defendant's Motion for Suppression of Evidence and Amended Motion for Suppression of Evidence. *See* Order dated October 21, 2014.

A jury trial commenced before this court on June 8, 2015,[8] continued over the next two (2) days and concluded on June 10, 2015. N.T. 6/8/15. N.T. 6/9/15. N.T. 6/10/15. As to both prosecuted offenses, Count 1 - Robbery (Threaten Immediate Serious Bodily Injury)[9] and Count 2 - Robbery (Threaten Immediate Serious Bodily Injury),[10] the jury found Defendant Hill guilty. N.T. 6/10/15, pp. 211-214. *See also* Verdict.

On June 15, 2015, the Commonwealth lodged its Notice of Intention to Seek the Imposition of a Mandatory Minimum Sentence Pursuant to 42 Pa.C.S. § 9714. *See* Commonwealth's Notice.

A sentencing hearing was held before this court on July 29, 2015. N.T. 7/29/15. The court found after the presentation of such relevant evidence that the prosecution had sufficiently proven the applicability of the Sentences for Second and Subsequent Offenses' mandatory minimum provisions[11] and sentenced the Defendant to the following: Count 1 – Robbery

---

[7] On October 3, 2014, the court entered an order further memorializing its past decision to grant the Commonwealth's Motion to Re-Open Suppression Record. *See* Order dated October 3, 2014.

[8] From the exclusionary pleadings being decided through the beginning of trial, there were multiple court listings all of which were continued, unopposed, by either the defense or prosecution for various reasons, including ongoing plea negotiations, witness unavailability and/or the need to explore possible expert testimony.

[9] 18 Pa.C.S. §3701
[10] *Id.*
[11] 42 Pa.C.S. §9714.

3

(Threaten Immediate Serious Bodily Injury)[12] – a period of ten (10) to twenty (20) years incarceration at a state correctional facility; and Count 2 Robbery (Threaten Immediate Serious Bodily Injury)[13] – a ten (10) to twenty (20) year term of imprisonment at a state penal facility to run consecutively to that of Count 1 (Robbery).[14] The Defendant was deemed ineligible for recidivism risk reduction incentive, 61 Pa.C.S. §§4501 *et seq.* The Defendant was given the applicable time served credit. *See* Certificate of Imposition of Judgment of Sentence. *See also* N.T. 7/29/15.

Although dated August 3, 2015, this court received in chambers a handwritten letter from the Defendant entitled, "Post-Sentence Motion/Appeal" on August 11, 2015. *See* Defendant's Post-Sentence Motion/Appeal, dated August 3, 2015. This two (2) page letter set forth the following claims: " ... [T]he guilty verdict does not reflect the Commonwealths [*sic*] evidence;" Ineffective assistance of counsel; This court lacked jurisdiction; This court erred in its pre-trial denial of the Defendant's exclusionary challenges; and The sentence the court imposed was unfair and illegal. *See* Defendant's *Pro Se* Post-Sentence Motion/Appeal. The envelope in which the court received this *pro se* document was postmarked August 6, 2015, and noted as a return address the George W. Hill Correctional Facility (Delaware County Prison).

Knowing that Defendant Hill was still represented of-record by trial counsel, Clinton L. Johnson, Esquire, and recognizing that the ten (10) day period for the otherwise timely filing of post-sentence motions had expired, this court immediately listed the above-captioned matter for the next day, August 12, 2015. *See* Pa.R.Crim.P. 720(A)(1),[15]

---

[12] 18 Pa.C.S. §3701.
[13] *Id.*
[14] *Id.*

[15] This court readily recognized that on its face the post-sentence motion of the Defendant's was untimely. Pa.R.Crim.P. 720(A)(1). This court was also aware that the "prisoner mailbox rule" provides that an inmate's

4

At this listing of August 12, 2015, the court made known to both the Commonwealth's and Defendant's lawyers its receipt of the Defendant's *pro se* post-sentence motion, directed that this self-represented pleading be made part of the case record, and provided copies of the same to counsel. *See* Pa.R.Crim.P. 576(A)(4). While recognizing Defendant Hill via his *pro se* document took issue with his trial attorney's stewardship,[16] the court in the interests of preserving the Defendant's ability to pursue on direct appeal certain appellate complaints rebuffed Mr. Johnson's efforts to step aside suggesting that an of-record petition to withdrawal

---

pleading " ... shall be deemed to be filed on the date he delivers [such a document] to prison authorities and/or places his [filing] in the institutional mailbox." *Smith v. Board of Probation and Parole*, 546 Pa. 115, 122, 683 A.2d 278, 281 (1996). *See also Commonwealth v. Caster*, 766 A.2d 1283, 1285-87 (Pa.Super. 2001) *citing Commonwealth v. Little*, 716 A.2d 1287, 1288-89 (Pa.Super. 1998) and *Commonwealth v. Jerman*, 762 A.2d 366, 368 (Pa.Super. 1998).

This court relatedly realized that a defendant may proceed *pro se* or can enjoy the benefit of an attorney's stewardship; however, a "hybrid representation" of a *pro se* litigation contemporaneous with a lawyer's of-record representation is prohibited. *Commonwealth v. Nischan*, 928 A.2d 349, 355 (Pa.Super. 2007). *See also Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993). Flowing from this "hybrid representation' prohibition, a defendant's *pro se* lodging when represented of-record by counsel is a legal nullity which a court cannot adjudicate. *Commonwealth v. Nischan supra.*

At bar, Mr. Johnson had neither sought nor had this court granted him leave to withdrawal his representational appearance prior to the Defendant lodging his *pro se* post-sentence motion. *See* Pa.R.Crim.P. 120. The "prisoner mailbox rule" being applicable to only self-represented inmate litigants and Defendant Hill then being represented of-record by counsel when he forwarded his *pro se* post-sentence motion to the court in contravention of the "hybrid representation" prohibition, the Defendant's "timely" *pro se* post-sentence motion seemingly enjoys no legal viability.

[16] The rupture of a proper attorney-client relationship between Mr. Johnson and Defendant Hill became directly obvious to this court at sentencing on the Defendant exercising his right of allocution and then, in part, questioning trial counsel's stewardship. N.T. 7/29/15, pp. 20-28. The disintegration of needed communications between the Defendant and Mr. Johnson is further reflected by the *pro se* post-sentence motion claiming trial counsel was incompetent. *See* Defendant's *Pro Se* Post-Sentence Motion/Appeal.

This untenable situation was further acerbated by the Defendant being quickly transferred from the George W. Hill Correctional Facility (Delaware County Prison) to the Graterford state correctional institution immediately subsequent to sentencing imposition.

For these compelling reasons, the court has opted to view as may be salient to such considerations counsel's post-sentencing motions as including an application for leave to proceed *nunc pro tunc* and relatedly granted the same. *See* Order dated August 13, 2014.

5

should be lodged subsequent to counsel's filing post-sentence motions and contemporaneous with a notice of appeal's lodging, assuming the post-sentence motions' denial.[17]

The court via an order of August 13, 2014, granted Defendant Hill's lawyer leave to proceed with his then just lodged post-sentence motions *nunc pro tunc* while urging that any appeal notice be filed no later than thirty (30) days subsequent to the imposition of sentence, July 29, 2015. *See* Order dated August 13, 2014, Fns. 2-4. *See also* Defendant's Post-Sentence Motions dated August 13, 2014. This same order (August 13, 2014) also denied defense counsel's post-sentence motions.

The Defendant's trial lawyer on August 17, 2015, lodged a Motion to Withdraw as Counsel. *See* Motion to Withdraw as Counsel.

On August 26, 2015, the court permitted Mr. Johnson to step aside as Defendant Hill's attorney. *See* Order dated August 26, 2015.

A Notice of Appeal was timely lodged on August 27, 2015, by the Defendant through counsel. *See* Notice of Appeal. *See also* Superior Court No. 2612 EDA 2015.

By correspondence on that same date (August 27, 2015), this court requested that Patrick J. Connors, Esquire, of the Delaware County Public Defender's Office determine whether Defendant Hill was eligible for its professional services. *See* Letter dated August 27, 2015.

---

[17] *See* Pa.R.Crim.P. 607(a)(1)(2)(3) and Comment to Pa.R.Crim.P. 607; *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012) ("[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing.") *citing* Pa.R.Crim.P. 607 and *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super. 2011); and *Commonwealth v. Bryant*, 57 A.3d 191, 197 (Pa.Super. 2012). *See also Commonwealth v. Felder*, 75 A.3d 513, 515 (Pa.Super. 2013) ("Challenges to the discretionary aspects of a sentence must be raised first in the trial court, either in a post-sentence motion or by presenting them during the sentencing proceeding ... The failure to do so results in a waiver of all such claims.") *citing Commonwealth v. Rhoades*, 8 A.3d 912, 915 (Pa.Super. 2010); *Commonwealth v. Kittrell*, 19 A.3d 532, 538 (Pa.Super. 2011) *quoting Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa.Super. 2004), *appeal denied*, 580 Pa. 695, 860 A.2d 122 (2004); and *Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa.Super. 2003) *quoting Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003).

On September 1, 2015, Mr. Connors entered his appearance in the above-captioned matter for purposes of the Defendant's present appeal. *See* Entry of Appearance.

This court instructed the Defendant's counsel per such an order of September 10, 2015, to file a Statement of Matters Complained of on Appeal. *See* Order dated September 10, 2015.

On September 28, 2015, Defendant Hill's lawyer lodged a Petition for Extension of Time to File Statement of Matters Complained of on Appeal. *See* Petition for Extension of Time. Via an order of this same date (September 28, 2015), the court granted the extension application and directed counsel to lodge a statement of appellate complaints no later than October 22, 2015. *See* Order dated September 28, 2015.

Responding to this court's order (September 28, 2015), the Defendant's attorney lodged on October 19, 2015, a statement of matters complained asserting the three (3) below discussed assignments of error.

## *I. Discussion*

Defendant Hill's advanced complaints on appeal all challenge this court's pre-trial exclusionary rulings. *See* Statement of Matters Complained. *See also* Order dated October 21, 2014. The appellate review standard regarding a trial court's denial of a suppression claim is well-settled and as described by the Superior Court below:

> [W]hen an appellate court reviews the ruling of a suppression court, we consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. We must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. The suppression court's factual findings are binding on us and we may reverse only if the legal conclusions drawn therefrom are erroneous.

7

*Commonwealth v. Conrad*, 892 A.2d 826, 828 (Pa.Super. 2006) *quoting Commonwealth v. Rosas*, 875 A.2d 341, 346 (Pa.Super. 2005). *See also Commonwealth v. El*, 933 A.2d 657, 660 (Pa.Super. 2007) *quoting Commonwealth v. Nobalez*, 805 A.2d 598, 600 (Pa.Super. 2002), *appeal denied*, 575 Pa. 692, 835 A.2d 709 (2003); *Commonwealth v. Cook*, 865 A.2d 869, 873 (Pa.Super. 2004) *citing Commonwealth v. Ayala*, 791 A.2d 1202, 1207 (Pa.Super. 2002) *citing Commonwealth v. Turner*, 772 A.2d 970, 972-73 (Pa.Super. 2001) *(en banc)*; and *Commonwealth v. Ryerson*, 817 A.2d 510, 513-14 (Pa.Super. 2003) *quoting Commonwealth v. Johnson*, 734 A.2d 864, 869 (Pa.Super. 1999).

Salient to the Defendant's appellate complaints, the following is a factual summary of the suppression hearings' evidentiary presentations. N.T. 8/5/14 and N.T. 10/2/14.

In June of 2013, Agent Dage Gardner of the Pennsylvania Board of Probation and Parole was assigned supervisory responsibility of Defendant Hill's parole stemming from the Defendant's previous robbery conviction. N.T. 10/2/14, p. 9. Defendant Hill had past been provided and signed an Order to Release on Parole detailing the conditions of his parole. N.T. 10/2/14, pp. 10-12. *See also* Commonwealth Exhibit CS-11 - Order to Release on Parole. The Defendant's approved address during his parole oversight was 6565 Windsor Street, Philadelphia, Pennsylvania. N.T. 10/2/14, p. 9. Defendant Hill was required to obtain permission from Agent Gardner before he was permitted for any reason to leave Philadelphia County. N.T. 10/2/14, pp. 11-12. Agent Gardner for the sole and limited purpose of his employment had previously given Defendant Hill approval to leave Philadelphia County. N.T. 10/2/14, p. 23.

Throughout the course of Agent Gardner's supervision of him, the Defendant sought permission to visit his children in Kennett Square, Chester County, Pennsylvania. N.T. 10/2/14, p. 13. The address for his children that Defendant Hill provided Agent Gardner was 1311 Market Street Kennett Square, Pennsylvania. Agent Gardner on at least one occasion visited this residence (1311 Market Street Kennett Square, Pennsylvania) and found an unrelated family occupying the home. N.T. 10/2/14, pp. 14-15.

8

In July of 2013, Agent Gardner was contacted by Trooper John Sutherland of the Pennsylvania State Police informing him that Defendant Hill was a suspect in two (2) robberies that had taken place in Delaware County and Lancaster County. N.T. 10/2/14, p. 15. Resulting from this conversation with Trooper Sutherland, Agent Gardner arranged for a July 9, 2013, meeting with Defendant Hill. N.T. 10/2/14, p. 15. This meeting took place at the Defendant's approved residence, 6565 Windsor Street, Philadelphia, Pennsylvania. N.T. 10/2/14, pp. 15-16.

Defendant Hill at the time of his supervision was in possession of a blue Nissan Maxima. N.T. 10/2/14, p. 16. On arriving at the scheduled meeting on July 9, 2013, the Defendant was the passenger in a gray Dodge Avenger owned by his girlfriend, who was driving the motor vehicle. N.T. 10/2/14, pp. 16-17. The Defendant had past informed Agent Gardner that his girlfriend lived at the 1311 Market Street address, the same residence Defendant Hill had sought permission to visit his children and which the agent previously confirmed was occupied by an unrelated family. N.T. 10/2/14, p. 18. Agent Gardner made it known in discussions with Defendant Hill that he was aware the Defendant was not residing at his approved Philadelphia home. N.T. 10/2/14, pp. 19-20. Agent Gardner once again instructed Defendant Hill that he was not to live outside the city of Philadelphia. N.T. 10/2/14, p. 20. Agent Gardner also wrote down the Avenger's license plate and after conducting a motor vehicle record inquiry found that the automobile was registered to the address of 301 Cedar Wood Circle, Kennett Square, Pennsylvania. N.T. 10/2/14, p. 18.

On July 12, 2013, after learning the address at which the girlfriend's automobile was registered, Agent Gardner went to 301 Cedar Wood Circle, and located the gray Dodge Avenger. N.T. 10/2/14, p. 21. Agent Gardner also found Defendant Hill's blue Nissan Maxima in an apartment complex located in the immediate vicinity. This was the same motor vehicle that the

9

Defendant had told him at their most recent past meeting (July 9, 2013) was being repaired. N.T. 10/2/14, pp. 17-18, 21. Due to Agent Gardner visiting 301 Cedar Wood Circle during the late evening hours, he was unable to procure needed help in then detaining the Defendant for his parole violations. N.T. 10/2/14, p. 24. In subsequent discussions with the state police, Agent Gardner related to investigating troopers the results of his motor vehicle inquiry regarding the Avenger's registration address and Defendant Hill's connection to the Kennett Square home, 301 Cedar Wood Circle. N.T. 8/5/14, pp. 37-38.

During this same time period, Pennsylvania State Trooper Kirby was detailed to investigate a robbery that took place in Concord Township, Delaware County. N.T. 8/5/14, pp. 30-31. At the time he was assigned to the case, the Defendant was already a suspect stemming from a similar robbery in Lancaster County where the perpetrator's description matched that of Defendant Hill, as well as the assailant's license plate, recorded by a security officer, matched the motor vehicle owned by Defendant Hill, the blue Nissan Maxima. N.T. 8/5/14, p. 31.

Following the identification of the Defendant as a suspect in the robbery, his cellular telephone records were sought and obtained through a past search warrant.[18] N.T. 8/5/14, p. 32. This telephone data used in conjunction with cellular phone towers' locations showed that the Defendant's cellular telephone and by reasoned extension Defendant Hill was in close proximity to both the Delaware County and Lancaster County robbery locations at the time of their occurrence. N.T. 8/5/14, pp. 32-33. The cellular phone information also revealed that the Defendant was recently in Chester County, Pennsylvania, Maryland and Delaware. N.T. 8/5/14, pp. 36-37. Agent Gardner was made aware the Defendant's cellular telephone records evidenced

---

[18] This phone record search warrant was not at bar the subject of any exclusionary challenge.

10

Defendant Hill, absent the agent's approval, had been outside the board's Philadelphia district, left Pennsylvania, and was not residing at his designated home. N.T. 10/2/14, pp. 24-27.

As part of his investigative activities, Trooper Kirby and other members of the Pennsylvania State Police Avondale barracks conducted surveillance of the address at 301 Cedar Wood Circle. N.T. 8/5/14, p. 39. While surveying the area around the home, Trooper Kirby and separately, the Pennsylvania State Police Avondale troopers observed the Defendant's blue Nissan Maxima in an apartment complex immediately adjacent to the residence, 301 Cedar Wood Circle. N.T. 8/5/14, pp. 39-40.

On July 24, 2013, Trooper Kirby applied for a search warrant regarding the residence, 301 Cedar Wood Circle Kennett Square, Pennsylvania, to a Chester County Magisterial District Judge. N.T. 8/5/14, pp. 38, 40-41. On this same date (July 24, 2013), the reviewing magistrate approved the search warrant. N.T. 8/5/14, p. 42. *See* Commonwealth Exhibit CS-1 – Search Warrant No. MD 87-13 issued July 24, 2013.

As of July 25, 2013, and previous to the Defendant being taken into custody Agent Gardner had secured board authorization to detain and commit Defendant Hill. N.T. 10/2/14, pp. 30-32. *See also* Commonwealth Exhibit CS-2 - Commit and Detain Warrant. Agent Gardner had also prior to the Defendant's apprehension informed Trooper Kirby that regardless of what investigating troopers found during the search of the 301 Cedar Wood Circle home he would be detaining the Defendant for his parole violations. ("Despite what was going on I was going to take – I was going to arrest Mr. Hill for being out of the district and not living where he's supposed to be.") N.T. 10/2/14, pp. 25, 27. N.T. 8/5/14, pp. 40-41. Agent Gardner relatedly requested that the troopers take the Defendant into custody, if in the course of the search warrant's execution such an opportunity arose. N.T. 10/2/14, pp. 29-31, 39.

11

During the early morning hours of July 25, 2012, Troopers Kirby and Richardson in anticipation of the search warrant being executed shortly thereafter were conducting surveillance of the home, 301 Cedar Wood Circle, and otherwise making related preparations. N.T. 8/5/14, pp. 42-44. With their noticing the brake lights being activated on the Dodge Avenger of Defendant Hill's girlfriend, the troopers became aware that two (2) individuals were inside the motor vehicle. N.T. 8/5/14, p. 44.

Once the Avenger left the residence, Troopers Kirby and Richardson conducted a motor vehicle stop. N.T. 8/5/14, pp. 44-45. At the time of the stop, Trooper Richardson was in full uniform while Trooper Kirby was in plainclothes with his badge was displayed. N.T. 8/5/14, p. 45. At the time he was taken into custody, the troopers were certainly aware that the Defendant's criminal record consisted of a violent crime and the subjects of Trooper Kirby's current investigation were two (2) armed robberies. N.T. 8/5/14, pp. 49-51.

On approaching the automobile, the troopers observed the Defendant was situated in the passenger seat. N.T. 8/5/14, p. 47. As Trooper Richardson removed Defendant Hill from the motor vehicle a struggle ensued. N.T. 8/5/14, p. 48. This confrontation resulted when Defendant Hill ignored Trooper Richardson's instructions directing the Defendant to the ground in order to place him into custody. N.T. 8/5/14, p. 48. While the Defendant continued to disregard Trooper Richardson's repeated directions that he remain on the ground prone with his hands behind the back, Trooper Kirby placed his foot on Defendant Hill's head and/or neck area and began pushing toward the ground. N.T. 8/5/14, p. 48. This scuffle took place on a grassy area next to the roadway as opposed to the pavement where the car had been stopped. N.T. 8/5/14, p. 90.

12

After being placed in custody, Defendant Hill was informed by Trooper Kirby that he was being detained for a parole violation. N.T. 8/5/14, p. 52. Per such past discussions, the troopers notified Agent Gardner of the Defendant being taken into custody. N.T. 10/2/14, pp. 30-31. Following the Defendant's apprehension, he was brought to the Pennsylvania State Police Avondale barracks. N.T. 8/5/14, p. 52. On returning to the Avondale barracks, Defendant Hill was placed in a holding cell. Shortly thereafter, Agent Gardner arrived at the barracks and provided the state troopers with the board's commit and detain warrant for the Defendant grounded in his having violated the terms and conditions of parole. N.T. 8/5/14, pp. 55-56. N.T. 10/2/14, pp. 30-32. *See also* Commonwealth Exhibit CS-2 – Commit and Detain Warrant.

Trooper Kirby and other law enforcement officers executed the search warrant for the residence located at 301 Cedar Wood Circle, Kennett Square, Pennsylvania, subsequent to the Defendant's being taken into custody. Per this search warrant's authorization, Trooper Kirby was interested in seizing specific pairs of shoes and other items that were past stolen during the two (2) robberies that took place at shoe stores as well as the handgun the robber brandished. N.T. 8/5/14, pp. 56-57. *See also* Commonwealth Exhibits CS-1 – Search Warrant No. MD 87-13 issued July 24, 2013. To assist them in more easily locating the footwear, the troopers were past provided pictures of the stolen shoes. N.T. 8/5/14, pp. 57. While executing the search, Trooper Kirby came upon the shoes and a leather bag that had been taken during the Concord Township robbery, but was unable to find any of the items stolen from the Manheim Township robbery. N.T. 8/5/14, pp. 56-57. The troopers also recovered during the course of their search a pellet gun that fit the description of the firearm that was used by the assailant during the course of the robberies. N.T. 8/5/14, p. 57.

13

Defendant Hill was then transported to the Pennsylvania State Police Media barracks[19] where he was interviewed by Trooper Kirby and Corporal Michael P. Skahill. N.T. 8/5/14, p. 60. The interview took place in a separated office like room modestly furnished with a small desk, a few chairs and a bench seating area. N.T. 8/5/14, pp. 60-62. For purposes of this interview, the Defendant's handcuffs were removed, but for safety concerns he was still restrained to the benchseat via leg shackles. N.T. 8/5/14, p. 61. Trooper Kirby and Corporal Skahill sat at the nearby desk. N.T. 8/5/14, p. 61.

The interview began by Trooper Kirby informing Defendant Hill that they " ... were investigating two (2) robberies, one in Manheim Township, Lancaster County and one (1) in Concord Township, Delaware County. And that I would like to speak to him about those robberies and he agreed to speak with me." N.T. 8/5/14, p. 63. Immediately following his summarized description of the investigation's subjects, Trooper Kirby utilized a *Miranda* Rights Warning and Waiver form and read Defendant Hill his *Miranda* rights. N.T. 8/5/14, p. 63. Trooper Kirby read the *Miranda* Rights Warning and Waiver form word-for-word. N.T. 8/5/14, pp. 64-66.

After reciting verbatim the *Miranda* warnings, Trooper Kirby handed the form to Defendant Hill, who appeared to review and read the same before he signed the document further confirming his understanding of those rights, his waiver of such and agreement to speak with the troopers. N.T. 8/5/14, pp. 72-74. Corporal Skahill was also present during Trooper Kirby's recitation of the *Miranda* warnings and relatedly observed the Defendant execute the form subsequent to his review. N.T. 8/5/14, pp. 111-12. Both Trooper Kirby and Corporal Skahill as

---

[19] Defendant Hill was driven from the Avondale to the Media barracks by state police personnel other than Trooper Kirby. N.T. 8/5/14, p. 54.

14

well signed the *Miranda* rights waiver form. N.T. 8/5/14, p. 74. *See also* Commonwealth Exhibit CS-4 – Rights Warning and Waiver Form.

At the time of his interview, the Defendant was not under the influence of alcohol or any controlled substance, falling asleep, lethargic, or displaying any signs that he was under the influence of any intoxicants. N.T. 8/5/14, pp. 66-69, 113-15. Defendant Hill also did not manifest any signs that he was suffering from any mental disease or defect. N.T. 8/5/14, p. 69. The Defendant did not evidence to the troopers that he was in any way illiterate, or could not read, write or understand the English language. N.T. 8/5/14, pp. 69-70, 116-17.

The Defendant's demeanor, appearance, physical condition, his responses to his questions, and interactions with the troopers did not cause Trooper Kirby to question whether he lacked the mental capacity to speak with the trooper and/or answer questions. N.T. 8/5/14, p. 70. Defendant Hill did not display signs of suffering from any cognitive disability. N.T. 8/5/14, p. 70.

Throughout the interview's entirety, including but not limited to the Defendant being advised of his applicable *Miranda* rights, neither Trooper Kirby nor Corporal Skahill physically accosted Defendant Hill and/or threatened the same. The troopers likewise did not in any manner threaten the Defendant's family members. Trooper Kirby and/or Corporal Skahill did not in exchange for Defendant Hill waiving his constitutional protections and providing a statement promise him anything. N.T. 8/5/14, pp. 70-72, 115-16.

After the Defendant and troopers signed the *Miranda* Rights Warning and Waiver form, but prior to the start of the interview, Trooper Kirby informed Defendant Hill that their discussions would be recorded. N.T. 8/5/14, p. 74. *See also* Commonwealth Exhibit CS-5 – Audio Recording of Defendant's Statement. The Defendant did not object to the interview being

15

recorded. N.T. 8/5/14, p. 119. The recording device was never turned off during the entirety of the interview. N.T. 8/5/14, p. 119.

At no point throughout the interview did the Defendant inform Corporal Skahill, even when outside the presence of Trooper Kirby, that he was afraid of Trooper Kirby or mention that Trooper Kirby had allegedly assaulted him physically. N.T. 8/5/14, pp. 118-19. Defendant Hill relatedly did not reference his being subdued by the troopers when taken into custody and/or request of Corporal Skahill that he be afforded medical treatment. N.T. 8/5/14, pp. 118-19, 124-25.

Corporal Skahill observed during the interview that Defendant Hill did not display any visible signs of injury. The corporal noted there was no bruising about the Defendant's face, arms, forehead or neck. Corporal Skahill further saw Defendant Hill had no cuts or lacerations and his nose was not bloodied. N.T. 8/5/14, pp. 79-80, 119-20. The corporal identified a number of photographs taken of the Defendant when processed that morning all of which depicted Defendant Hill to be injury free. N.T. 8/5/14, pp. 119-20. *See also* Commonwealth Exhibits CS-6, CS-7, and CS-8 – Defendant's Processing Photographs.

Defendant Hill at no time when being interviewed by the troopers requested or in any other manner indicated he wanted the questioning to cease. The Defendant did not during the interview refuse to answer the troopers' inquiries. Defendant Hill did not directly state or otherwise indicate he wanted counsel's assistance. N.T. 8/5/14, pp. 72, 77, 113. *See also* Commonwealth Exhibit CS-5 – Audio Recording of Defendant's Statement.

Defendant Hill during the course of the interview admitted to being the individual that committed the two (2) shoe store robberies. N.T. 8/5/14, p. 80. *See also* Commonwealth Exhibit CS-5 – Audio Recording of Defendant's Statement.

16

Defendant Hill testified at the suppression hearing before this court. N.T. 8/5/14, pp. 132-69. In his testimony, the Defendant relayed to the court that at the time of his detention he was verbally and physically abused by Troopers Richardson and Kirby, specifically that Trooper Kirby threatened him, kicked him in the side of the head, and stepped on his head with all of the trooper's weight. N.T. 8/5/14, pp. 135-36. Defendant Hill additionally informed the court that the only reason he provided Trooper Kirby with directions to the Pennsylvania State Police Avondale barracks was that he was afraid the trooper was driving to an isolated location to continue unobserved his assault on the Defendant. N.T. 8/5/14, pp. 137-38.

Defendant Hill additionally testified that on arriving at the Pennsylvania State Police Avondale barracks Trooper Kirby threatened the Defendant's girlfriend and children with eviction from their home. N.T. 8/5/14, p. 141.

Defendant Hill also asserted that during his interview at the Media Pennsylvania State Police barracks he informed the troopers he did not want to talk, the troopers discarded a first *Miranda* rights form as well as "forced" him to sign a second *Miranda* Rights Warning and Waiver form, and that he was afraid of the troopers, notably Trooper Kirby. N.T. 8/5/14, pp. 144-45, 148. *See also* Commonwealth Exhibits CS-4 – Rights Warning and Waiver and CS-5 – Audio Recording of Defendant's Statement.

***II. The court erred in refusing to suppress the statement that Mr. Hill supplied to police since it is the fruit of a seizure that was conducted without legal justification and in violation of Pa. Const. art 1, § 8; U.S. Const. amd. IV, XIV***

*See* Statement of Matters Complained, No. 1.

By way of this first appellate complaint, Defendant Hill maintains that the court erred in its decision to deny the requested exclusion of the Defendant's statement to investigating state

troopers that was given following his purportedly illegal seizure. *See* Statement of Matters Complained, No. 1. *See also* Order dated October 21, 2014.

Because of the most generalized nature of this appellate complaint, the court is constrained to assume that on appeal Defendant Hill similar to the argument advanced during the litigation of his suppression claim is once more challenging the lawfulness of state troopers taking him into custody for then being a state parole violator. N.T. 8/5/14, pp. 11-16 and N.T. 10/2/14, pp. 7-40. *See also* Defendant's Motion for Suppression of Evidence and Defendant's Memorandum of Law in Support of Suppression Motions. Any such error assignment is meritless.

Under both the United States Constitution's Fourth Amendment and Article 1, Section 8 of the Pennsylvania Constitution, warrantless searches and seizures are presumptively unreasonable and therefore prohibited, excluding established exceptions. *Commonwealth v. Williams*, 547 Pa. 577, 584-85, 692 A.2d 1031, 1034-35 (1997) *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043 (1973); and *Commonwealth v. Kohl*, 532 Pa. 152, 171-72, 615 A.2d 308, 318 (1992).

It is a recognized exception to the warrant requirement that state parolees are subject to warrantless arrests stemming from their violating the terms and/or conditions of parole release. *Smith v. Commonwealth*, 131 Pa.Cmwlth. 360, 367, 570 A.2d 597, 600 (1990). A parolee may be lawfully arrested absent a warrant whether the violations are of a "technical" nature or grounded on an allegation of new criminality. *Commonwealth v. Lyons*, 382 Pa.Super. 438, 445-46, 555 A.2d 920, 923 (1989). *See also* 61 Pa.C.S. §6152 ("An agent is declared to be a peace officer and is given police power and authority throughout this Commonwealth to arrest ... any

18

parolee ... for failing to report as required by the terms of his ... parole or for any other violation of the ... parole.").

Probation-parole agents may enlist the assistance of other law enforcement personnel to apprehend and take into custody a parole violator. *Commonwealth v. Lyons supra* 382 Pa.Super. at 442-43, 555 A.2d at 922. When acting at the behest of a probation-parole agent, police authorities may take physical custody of a parole violator even though probation-parole personnel are not then physically on scene and/or regardless of whether such an order of court has yet to be entered and/or an arrest warrant has then been issued. *Id.* 382 Pa.Super. at 445-47, 555 A.2d at 923-24.

Material to Defendant Hill's contention his subsequent statement was the "fruit" of being illegally taken into custody, it is long-settled that "[a]ny evidence obtained as a result of [an unlawful seizure] should ... be suppressed as 'fruit of the poisonous tree.' " *Commonwealth v. Myers*, 728 A.2d 960, 964 (Pa.Super. 1999) *citing Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). "Evidence obtained from an unreasonable ... seizure is inadmissible at trial." *Commonwealth v. Bell*, 871 A.2d 267, 273 (Pa.Super. 2005) *citing Commonwealth v. Campbell*, 862 A.2d 659, 663 (Pa.Super. 2004). An inculpatory statement that results from an unlawful arrest is tainted by such illegality and should be excluded. *See Commonwealth v. Agnew*, 411 Pa.Super. 63, 79, 600 A.2d 1265, 1274 (Pa.Super. 1991) *citing Wong Sun v. United States supra; Commonwealth v. Nelson*, 488 Pa. 148, 411 A.2d 740 (1980) (plurality opinion); and *Commonwealth v. Farley*, 468 Pa. 487, 364 A.2d 299 (1976).

The credible evidence at bar reveals the Defendant's assigned Pennsylvania Board of Probation and Parole State Agent, Dage Gardner, had more than sufficient cause to believe as of July 2013 Defendant Hill was in violation of the terms and conditions of his parole oversight,

19

including but not limited to unapproved, out-of-county residency and traveling, absent permission, beyond Pennsylvania. *See* Commonwealth Exhibit CS-11 - Order to Release on Parole. Agent Gardner resultantly decided the Defendant as a parole violator was to be taken into custody and relatedly asked directly of Pennsylvania State Police personnel that the troopers on encountering the Defendant were for such reasons to apprehend him. N.T. 10/2/14, pp. 30-31, 39. Acting on this request of Agent Gardner for such assistance, Pennsylvania State troopers took Defendant Hill into custody.

During his supervision of Defendant Hill, Agent Gardner became aware that the Defendant was not living at his past, approved, Philadelphia County residence, but rather was discovered to have been at the 311 Cedar Wood Circle (Chester County) residence. N.T. 10/2/14, pp. 19-20, 26, 38, 39-40. The Defendant had also past lied to Agent Gardner about his children's supposed Chester County residence. N.T. 10/2/14, pp. 13-15. Similarly, through his conversations with Trooper Kirby, Agent Gardner became aware of Defendant Hill also violating his parole by leaving the limits of Philadelphia County through not only living in Chester County Pennsylvania, but also traveling about Maryland and Delaware. N.T. 8/5/14, pp. 26, 36-37, 39-40. As Agent Gardner was well aware with good, specific and articulable cause that the Defendant had committed numerous parole violations his decision to have Defendant Hill taken into custody was legally proper. *Commonwealth v. Lyons supra* 382 Pa.Super. at 445-46, 555 A.2d at 923. N.T. 10/2/14, pp. 30-31. *See also* Commonwealth Exhibit CS-2 - Commit and Detain Warrant.

While this court recognizes that the issue before the Superior Court in *Commonwealth v. Lyons* was the propriety of a county probation-parole officer requesting police authorities' aid to apprehend a violator, the actions of state Probation and Parole Agent Gardner at bar enlisting the

20

assistance of the Pennsylvania State Police to take Defendant Hill into custody for parole violations is simply a distinction without a material difference. *Id.* 382 Pa.Super. at 442-44, 555 A.2d at 921-23. N.T. 10/2/14, p. 39. This court certainly can conceive of no good reason to conclude that although county probation-parole officers may solicit law enforcement help in effectuating a warrantless apprehension of such violators, agents of the State Board of Probation and Parole are prohibited from requesting of police personnel this very same assistance and/or unlike their county counterparts, state agents must be physically present at the scene of a parolee being taken into custody. *Id.* 382 Pa.Super. at 442-43, 445-47, 555 A.2d at 922-24.

Acting at the behest of Agent Gardner, the Pennsylvania State Police lawfully took the Defendant into custody for then being in violation of his state parole's governing terms and/or conditions. N.T. 10/2/14, p. 25. N.T. 8/5/14, pp. 40-41. *See also* Commonwealth Exhibits CS-2 – Commit and Detain Warrant and CS-11 – Order to Release on Parole.

As Defendant Hill was legally placed in custody, the statements he made stemming from this seizure were not the product of any unlawful act on part of the Pennsylvania State troopers and/or Pennsylvania Board of Probation and Parole Agent Gardner. *See Smith v. Commonwealth supra* 131 Pa.Cmwlth. at 367, 570 A.2d at 600 and *Commonwealth v. Lyons supra* 382 Pa.Super. at 445-46, 555 A.2d at 923. *See also Commonwealth v. Myers supra* 728 A.2d at 964 *citing Wong Sun v. United States supra; Commonwealth v. Bell supra* 871 A.2d at 273 *citing Commonwealth v. Campbell supra* 862 A.2d at 663; *Commonwealth v. Agnew supra* 411 Pa.Super. at 79, 600 A.2d at 1274 *citing Wong Sun v. United States supra; Commonwealth v. Nelson supra;* and *Commonwealth v. Farley supra.* The Defendant's appellate complaint of his subsequent statement being "tainted" by an illegal seizure is therefore meritless.

21

***III. The Court erred in refusing to suppress the statement that Mr. Hill supplied to police since it was improperly induced, and therefore, not knowingly, voluntarily, or intelligently made.***

*See* Statement of Matters Complained, No. 2.

Unlike Defendant Hill's first appellate complaint which maintained his statement was "tainted" or the "fruit" of his purportedly being taken into custody unlawfully and mandated thus to be suppressed, the Defendant via this error assignment directly challenges the legality of his audio record statement claiming " … it was improperly induced and therefore, not knowingly, voluntarily, or intelligently made." *See* Statement of Matters Complained, No. 2. *See also* Commonwealth Exhibit CS-5 – Audio Recording of Defendant's Statement.

Similar to his first complaint on appeal, this second assignment of error as stated is also much generalized. Hence, this court is once more constrained to assume that for purposes of appellate review Defendant Hill, like was advanced during the exclusionary litigation, is again arguing that the court erred in not finding the Defendant's statement was the product of physical and/or verbal abuse and resultantly, not voluntarily given. N.T. 8/5/14, pp. 11-26, 132-69. *See also* Defendant's Motion for Suppression of Evidence and Defendant's Memorandum of Law in Support of Suppression Motions. This appellate complaint on the credible case record is without merit.

The Pennsylvania Supreme Court has past held the following in regard to statements made by a defendant who is subject to a custodial detention:

> A confession obtained during a custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained and the accused has knowingly and voluntarily waived those rights. The test for determining the voluntariness of a confession and whether an accused knowingly waived his or her rights looks to the totality of the circumstances surrounding the giving of the confession.

*Commonwealth v. Jones*, 546 Pa. 161, 170, 683 A.2d 1181, 1189 (1996).

22

As for the defense claim that the Defendant's recorded statement to investigators was involuntary coerced, the Supreme Court of Pennsylvania has also directed as follows:

> Voluntariness is determined from the totality of the circumstances surrounding the confession. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246 (1991); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041 (1973); *Commonwealth v. Jones*, 546 Pa. 161, 683 A.2d 1181 (1996). The question of voluntariness is ... whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. *Miller v. Fenton*, 796 F.2d 598 (1986). The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily. *Commonwealth v. Watts*, 319 Pa.Super. 179, 465 A.2d 1288 (1983) *affirmed* 507 Pa. 193, 489 A.2d 747 (1985); *see also Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515 (1986). ...
>
> When assessing voluntariness pursuant to the totality of the circumstance, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion. *Commonwealth v. Jones supra* 546 Pa. at 178, 683 A.2d at 1189 *citing Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078 (1993).

*Commonwealth v. Nester*, 551 Pa. 157, 163-64, 709 A.2d 879, 882 (1998). *See also Commonwealth v. Roberts*, 969 A.2d 594, 599 (Pa.Super. 2009) *citing Commonwealth v. Templin*, 568 Pa. 306, 313-14, 795 A.2d 959, 964 (2002). (" ... [T]he Pennsylvania Supreme Court has specifically disavowed the use of a narrow 'but-for' test when determining voluntariness.")

Foremost, as is salient to this appellate complaint's resolution, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gaffney*, 2015 WL 5936811, p. 3 *quoting Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006). *See also Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa.Super. 2011) *quoting Commonwealth v. Elmobdy*, 823 A.2d

23

180, 183 (Pa.Super. 2003). This court as detailed *infra* found the state troopers' testimony and that of Agent Gardner credible while discounting Defendant Hill's contrary testimonial claims

At the core of the defense's challenge to his statement's voluntariness was the Defendant's allegation that on taking him into custody Trooper Kirby allegedly kicked Defendant Hill in the side of the head and then stood with his full body weight on the Defendant's head. N.T. 8/5/14, pp. 135-36. Defendant Hill also testified that Trooper Kirby supposedly threatened him while enroute from the scene of his being taken into custody and the Avondale barracks. N.T. 8/5/14, p. 138. According to the Defendant, Trooper Kirby also purportedly threatened that he would do his utmost to have Defendant Hill's girlfriend evicted from her home. N.T. 8/5/14, p. 141. The Defendant as well proffered that Trooper Kirby threw away and/or otherwise destroyed a first *Miranda* rights form he had allegedly signed, "SUD" — signed under duress, to protest his treatment and conditions. N.T. 8/5/14, p. 142.

Undercutting the Defendant's assertions in such regard, the credible evidence at bar is wholly consistent with Trooper Kirby's testimony he used a modest measure of physical force to control the noncompliant Defendant Hill's physical movements so that a colleague state trooper could handcuff the Defendant. N.T. 8/5/14, pp. 48-52, 90. Furthermore, the relevant case record readily reveals the balance of Defendant Hill's physical and/or verbal abuse claims to be incredulous. *See* Commonwealth Exhibits CS-5 — Audio Recording of Defendant's Statement and CS-6, CS-7, CS-8 — Defendant's Processing Photographs.

Within thirty (30) to sixty (60) minutes of being taken into custody, the Defendant interacted with his assigned State Parole Agent, Dage Gardner. N.T. 8/5/14, pp. 139-40. Agent Gardner neither offered any testimony that he observed the Defendant to be physically injured

24

nor that the Defendant complained to him about being physically abused by Trooper Kirby. N.T. 10/2/14, pp. 7-40.

Corporal Skahill related that when present for the Defendant's interview he observed about him no signs of physical injury. Similarly, Corporal Skahill noted that the pictures taken after the Defendant was placed in custody also did not reveal any such marks or indicators of any injury. N.T. 8/5/14, pp. 119-20. *See also* Commonwealth Exhibits CS-6, CS-7, CS-8 - Defendant's Processing Photographs.

Moreover, the audio recording of the statement Defendant Hill now contends to have unknowingly, involuntarily, and unintelligently given outright belies his claims of physical and/or verbal police misconduct. *See* Commonwealth Exhibit CS-5 – Audio Recording of Defendant's Statement.

Having listened to the one (1) hour and fifteen (15) minute recorded interview this court heard nothing in the Defendant's tone, affect, and/or voice inflections suggesting that he was physically victimized to the nature and the degree he so testified at the suppression proceeding. Throughout the interview's entirety the Defendant was largely conversational and in a few instances was joking, laughing and/or chuckling. When describing how he had observed the police surveillance prior to law enforcement personnel approaching him as well as the circumstances of his being taken into custody, the Defendant made no mention of the trooper's supposed physicality. The Defendant during his interview voiced no complaints whatsoever to the corporal about being physically accosted even on Trooper Kirby leaving the room for a period of time to obtain items of seized physical evidence. *See* Commonwealth Exhibit CS-5 – Audio Recording of Defendant's Statement.

25

The Defendant was subject to a single incident of interrogation lasting in length one (1) hour and fifteen (15) minutes. *See* Commonwealth Exhibit CS-5 – Audio Recording of Defendant's Statement. His interrogation was preceded by involved state troopers properly providing him *Miranda* warnings and the Defendant knowingly, intelligently, and voluntarily waiving those rights. *See* Commonwealth Exhibit CS-4 – Rights Warning and Waiver. N.T. 8/5/14, pp. 63-65, 111-12. Throughout the entirety of his statement the tone of the interviewing investigators was conversational.

At the time of his statement, the Defendant was forty-two (42) years of age. There is no evidence at bar the Defendant suffered from any intellectual disability and his statement otherwise demonstrates he was certainly of sound intelligence. N.T. 8/5/14, p. 70.

By his own acknowledgement, the Defendant earned his "OG" ("Old Guy") status through garnering street credibility as a "problem solver." As recounted by the Defendant in his statement, he had prior experiences interacting with law enforcement authorities for past instances of unrelated criminality.

The Defendant's interview and resultant statement were obtained by investigators approximately four (4) to five (5) hours subsequent to his being taken into custody and the allegation that he was then physically abused by Trooper Kirby. The Defendant does not allege and there is simply no evidence that during his interview he was subject to any type of physical and/or other improprieties. During his statement the Defendant was not the object of any physical or threats otherwise. In their interview of him, involved state troopers observed no manifestations of substance intoxication and/or mental disease symptomologies. *See* Commonwealth Exhibit CS-5 – Audio Recording of Defendant's Statement. *See also* N.T. 8/5/14, pp. 66-69, 113-15.

26

In the context of an appeal attacking a trial court's denial of a statement's suppression challenged on the grounds of involuntary coercion, it has been argued that the absence of such an audio recording impedes an informed determination as to the statement's voluntariness by precluding the courts from scrutinizing vocal inflections, background noises, and/or other aural indications of involuntary coercion. *Commonwealth v. Paxton*, 821 A.2d 594, 595-96 (Pa.Super. 2003). Similarly, arguments have been advanced on appeal that constitutional due process demands the recording of a defendant's confession as a means to provide reviewing courts with direct insight into the interrogation process and the resulting statement subsequently challenged as involuntary. *Commonwealth v. Harrell*, 65 A.3d 420, 428-29 (Pa.Super. 2013).

In making its decision that Defendant Hill's claims of his being improperly compelled to provide an involuntary statement lacked credibility, this court was uniquely positioned. It had the benefit of both the entire statement being audio recorded as well as the pictorial evidence of the Defendant's processing photographs taken almost contemporaneously with his statement and timely subsequent to his supposed assault at the hands of Trooper Kirby. N.T. 8/5/14, pp. 78-80. *See also* Commonwealth Exhibits CS-5 – Audio Recording of Defendant's Statement and CS-6, CS-7, CS-8 – Defendant's Processing Photographs.

This court heard and considered the vocal inflections of both the interviewing troopers and Defendant Hill as well as the background noise and/or other aural indications of involuntary coercion, if any. *Commonwealth v. Paxton supra* 821 A.2d at 595-96. The processing photographs allowed this court to compare and contrast relevant, physical images of the Defendant with what it heard when reviewing the audio recorded statement in the context of the defense's police misconduct contentions.

27

Through this combination of verbal and illustrative evidence, this court enjoyed direct insight regarding the Defendant's interrogation process and his resulting statement attacked as involuntary. *Commonwealth v. Harrell supra* 65 A.3d at 428-29. This court's decision to reject Defendant Hill's assertions of law enforcement abuse and it relatedly finding his statement to have been knowingly, intelligently, and voluntarily provided was informed and reasoned given the credible evidentiary presentation.

Salient to Defendant Hill's exclusionary claims, this court was tasked with determining the credibility of those testifying and the weight, if any, to be afforded each witness's testimony. *See Commonwealth v. Gaffney supra* 2015 WL 5936811, p. 3 *quoting Commonwealth v. Gallagher supra* 896 A.2d at 585. *See also Commonwealth. v. Galendez supra* 27 A.3d at 1046 *quoting Commonwealth v. Elmobdy supra* 823 A.2d at 183. This court's exercising of its fact finding prerogative was grounded in reasonableness and benefitted from unique insights in the context of suppression litigation not commonly available. *See Commonwealth v. Conrad supra* 892 A.2d at 828 *quoting Commonwealth v. Roses supra* 875 A.2d at 346.

On the credible evidence at bar, the prosecution established by a fair preponderance of the evidence that under the totality of salient circumstances Defendant Hill's statement was voluntarily given. *Commonwealth v. Nester supra* 551 Pa. at 162-63, 709 A.2d at 882 and *Commonwealth v. Roberts supra* 969 A.2d at 599 *citing Commonwealth v. Templin supra* 568 Pa. at 313-14, 795 A.2d at 964. *See also* Pa.SJJI (Crim) 3.04(B)(C)(D). This appellate complaint on the credible, salient case record lacks merit.

28

***IV. The Court erred in refusing to suppress the fruits of the residence search at issue herein since the warrant for that search was not supported by probable cause.***

*See* Statement of Matters Complained, No. 3.

Defendant Hill maintains via this final appellate complaint that the court erred in failing to suppress the physical evidence recovered pursuant to the search of the residence, 301 Cedar Wood Circle, under the contention that the authorizing warrant lacked constitutionally necessary probable cause. *See* Statement of Matters Complained, No. 3. However, the search warrant past approved by a Magisterial District Judge of Chester County was supported by requisite probable cause and the search of the residence was thus lawful. This appellate complaint of the Defendant is meritless.

Salient to the suppression of physical evidentiary items, in determining whether a search warrant application establishes constitutionally mandated probable cause, an issuing authority may not consider any evidence beyond the supporting affidavits. Pa.R.Crim.P. 203(B). Relatedly, at a resulting hearing seeking to exclude from the Commonwealth's use at trial any items obtained pursuant to a search warrant, " ... no evidence shall be admissible to establish probable cause other than the [supporting] affidavits ... ." Pa.R.Crim.P. 203(D).

> Article I, Section 8 and the Fourth Amendment each require that search warrants be supported by probable cause. 'The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause.' *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 899 (1991) (*quoting Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187, 1191 (1986)). 'Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.' *Commonwealth v. Thomas*, 448 Pa. 42, 292 A.2d 352, 357 (1972).

*Commonwealth v. Jones*, 605 Pa. 188, 199, 988 A.2d 649, 655 (2010).

29

"The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that ... evidence of a crime will be found in the particular place." *Commonwealth v. Gray*, 509 Pa. 476, 484, 503 A.2d 921, 925 (1985). "The standard for evaluating whether probable cause exists for the issuance of a search warrant is a 'totality of the circumstances' test as set forth in *Illinois v Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by [the Pennsylvania Supreme Court] in *Commonwealth v. Gray supra* at 484, 503 A.2d at 925." *Commonwealth v. Jones*, 542 Pa. 418, 424, 668 A.2d 114, 116 (1995). "The *Gates* decision indicated that the 'totality of the circumstances' standard is flexible and not hypertechnical." *Commonwealth v. Klimkowicz*, 331 Pa.Super. 75, 78, 479 A.2d 1086, 1087 (1984). This probable cause determination necessary to a search warrant's lawful issuance is " ... based on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth v. Ruey*, 586 Pa. 230, 252, 892 A.2d 802, 815 (2006).

In reviewing a Magisterial District Judge's decision to issue a search warrant, the trial court has the obligation to assure that the magistrate's probable cause determination had a substantial basis. *Commonwealth v. Jones supra* 542 Pa. at 424, 668 A.2d at 117; *Commonwealth v. Gray supra* 509 Pa. at 484, 503 A.2d at 926 *citing Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736 (1960). When deciding whether a challenged search warrant affidavit meets constitutional scrutiny, the trial court must accord the issuing Magisterial District Court's probable cause determination deference and employ a common sense, nontechnical review. *Commonwealth v. Jones supra* 542 Pa. at 424, 668 A.2d at 117 *citing Commonwealth v. Baker*, 532 Pa. 121, 126-27, 615 A.2d 23, 25 (1992); *Commonwealth v. Gray supra* 509 Pa. at

30

484, 503 A.2d at 925 [citations omitted]. *See also Commonwealth v. Jones supra* 605 Pa. at 200, 988 A.2d at 656 *quoting United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination."). "The validity of any search warrant must be determined on a case-by-case basis considering the unique circumstances of each case." *Commonwealth v. Klimkowicz supra* 331 Pa.Super. at 81, 479 A.2d at 1089.

The affidavit offered in support of Commonwealth Exhibit CS-1 — Search Warrant No. MD 87-13 issued on July 24, 2013, sets forth adequate probable cause authorizing the search for those items specified of 301 Cedar Wood Circle. *See also* CS-3 — Search Warrant Inventory.

On employing a common sense, non-technical examination of the "totality of the circumstances," it is obvious that requisite probable cause was offered in the supporting affidavit to lawfully authorize the residence's resulting search. The affidavit of probable cause totaling six (6) pages in length provides vast support for the search warrant such as the following: Descriptions of the armed assailant from the both robberies; The similarities between the Concord Township robbery and the Manheim Township robbery; A description of the perpetrator's motor vehicle used during both robberies, including the license plate being observed in the Manheim Township robbery; The recorded license plate being registered to the Defendant; The Defendant's status as a parolee; Photographs of the Defendant compared to the composite sketch of the perpetrator of the two (2) robberies; Stemming from the previous and unchallenged search warrant the Defendant's cellular telephone and the records; Agent Gardner's knowledge that Defendant Hill provided him with a false address; Investigations of

31

the motor vehicle owned by the Defendant's girlfriend leading to Defendant Hill residing at 301 Cedar Wood Circle; The Defendant's cellular phone data used in conjunction with GPS coordinates and cellular telephone towers revealing his cellular phone was in the vicinity of the two (2) robberies when they took place; and Agent Gardner and the Pennsylvania State Police's past observations of the Defendant's motor vehicle at 301 Cedar Wood Circle. *See* Commonwealth Exhibit CS-1 – Search Warrant No. MD 87-13 issued July 24, 2013.

It is readily evident that these facts in their totality established the probable cause constitutionally necessary to support the search warrant for the residence located at 301 Cedar Wood Circle and the related search was legally proper. *See Commonwealth v. Jones supra* 542 Pa. at 424, 668 A.2d at 117 *citing Commonwealth v. Baker supra* 532 Pa. at 126-27, 615 A.2d at 25; *Commonwealth v. Gray supra* 509 Pa. at 484, 503 A.2d at 925. *See also Commonwealth v. Jones supra* 605 Pa. at 200, 988 A.2d at 656 *quoting United States v. Leon supra.* The Defendant's third appellate complained is thus without merit.

### *V. Conclusion*

On examining this matter and Defendant Hill's appellate complaints under the standard of review relevant to exclusionary claims' decisions of a trial court, it is clear that the record at bar "supports the factual findings" of this court and that the resultant "inferences and legal conclusions" drawn by this court were reasonable and not erroneous. *See Commonwealth v. Conrad supra* 892 A.2d at 828 *quoting Commonwealth v. Rosas supra* 875 A.2d at 346. *See also Commonwealth v. El supra* 933 A.2d at 660 *quoting Commonwealth v. Nobalez supra* 805 A.2d at 600, *appeal denied,* 575 Pa. 692; 835 A.2d 709 (2003); *Commonwealth v. Cook supra* 865 A.2d at 873 *citing Commonwealth v. Ayala supra* 791 A.2d at 1207 *citing Commonwealth v.*

32

*Turner supra* 772 A.2d at 972-73; and *Commonwealth v. Ryerson supra* 817 A.2d at 513-14 *quoting Commonwealth v. Johnson supra* 734 A.2d at 869.

This court committed no error as the Defendant's detention was justified under Agent Gardner's reasoned determination that the Defendant had violated terms of his parole release, Agent Gardner's enlisting the assistance of state troopers to take the parole violating Defendant into custody was legally permissible, the Defendant's statement to Trooper Kirby and Corporal Skahill was neither the "fruit" of a prior illegality nor the product of police misconduct, and the search of 301 Cedar Wood Circle, Kennett Square, Pennsylvania was grounded on a lawful, valid search warrant.

For all the aforementioned reasons, the Defendant Hill's sentencing judgment should be affirmed.

BY THE COURT:

_____
Kevin F. Kelly                                J.

2015 NOV 20 PM 2:36
OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO. PA
FILED

33